1   MARK W. YOCCA, State Bar No. 137189
    myocca@yocca.com
2   PAUL KIM, State Bar No. 157608
    pkim@yocca.com
3   THE YOCCA LAW FIRM LLP
    19900 MacArthur Boulevard, Suite 650
4   Irvine, California 92612
    Telephone:  (949) 253-0800
5   Facsimile:  (949) 253-0870

6   WALTER HANCHUK,
    whanchuk@chadbourne.com
7   DENNIS HOPKINS
    dhopkins@chadbourne.com
8   CHADBOURNE & PARKE LLP
    30 Rockefeller Plaza
9   New York, NY 10112
    Telephone:  (212)408-5100
10  Facsimile:  (212)541-5369

11  Attorneys for Petitioners
    PowerDsine, Inc., PowerDsine, Ltd., and
12  Microsemi Corporation

13

14              UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16  *In re* Subpoena to Broadcom      Misc. Case No.
    Corporation in,                   SACV08- 1095   CJC (ANx)

17                                    **DECLARATION OF PAUL TANCK
                                      IN SUPPORT OF JOINT
18  PowerDsine, Inc., *et al.* v. AMI  STIPULATION REGARDING
    Semiconductor, Inc., *et al.*,    PETITIONERS' MOTION TO
19                                    COMPEL DOCUMENTS**

20  United States District Court, Southern  [Notice of Motion, Joint Stipulation,
    District of New York, Case No. 07  **and Declaration of Dean Dunlavey
21  Civ. 6014 (SAS) (FM)              Filed Concurrently Herewith]**

22                                    **Date :       TBD
                                      Time:          TBD**
23                                    **Place:        TBD**
                                      **Discovery**
24                                    **Cut-Off in S.D.N.Y.: August 29, 2008**

25

26

27

28

**DECLARATION OF PAUL TANCK**

I, Paul Tanck, declare:

1.      I am an attorney with the law firm of Chadbourne & Parke LLP, counsel of record for Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd. (collectively "PowerDsine") and Third-Party Defendant Microsemi Corporation ("Microsemi" or, together with PowerDsine, "Plaintiffs") in the action entitled PowerDsine, Inc., *et al.* v. AMI Semiconductor, Inc., *et al.*, Case No. 07 Civ. 6014, filed on June 25, 2007, before the Honorable Judge Shira A. Scheindlin in the United States District Court for the Southern District of New York ("Lawsuit"). I have personal knowledge of the facts set forth below and, if called as a witness, could competently testify thereto.

2.      Attached as Exhibit A is a true and correct copy of Plaintiffs' February 6, 2008 subpoena duces tecum to Broadcom Corporation ("Broadcom").

3.      Attached as Exhibit B is a true and correct copy of Broadcom's February 19, 2008 objections and response to Plaintiffs' subpoena.

4.      Attached as Exhibit C is a true and correct copy of Plaintiffs' counsel's July 30, 2008 letter to counsel for Broadcom requesting a meet and confer regarding Plaintiffs' subpoena.

5.      Attached as Exhibit D is a true and correct copy Broadcom's counsel's July 31, 2008 letter responding to Plaintiffs' counsel's request for a meet and confer.

6.      Attached as Exhibit E is a true and correct copy of Plaintiffs' counsel's August 6, 2008 reply letter to Broadcom's counsel.

7.      Attached as Exhibit F is a true and correct copy of the protective order entered in the Lawsuit.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed in New York, New York on August 20, 2008.

Paul Tanck

Exhibit A

EX. A pg. 4

**Issued by the**

# UNITED STATES DISTRICT COURT

| CENTRAL | DISTRICT OF | CALIFORNIA |
|---|---|---|

| | |
|---|---|
| POWERDSINE, INC. and POWERDSINE, LTD.,<br>Plaintiffs,<br><br>v.<br><br>AMI SEMICONDUCTOR, INC. and<br>AMI SEMICONDUCTOR BELGIUM BVBA,<br>Defendants. | **SUBPOENA IN A CIVIL CASE**<br><br>Case Number: 07 CV 6014 (SAS)(FM)<br>U.S. District Court, Southern District of New York |

AMI SEMICONDUCTOR, INC. and
AMI SEMICONDUCTOR BELGIUM BVBA,

                Counterclaim-Plaintiffs,

        v.

POWERDSINE, INC. and POWERDSINE, LTD.,

                Counterclaim-Defendants,

        and

MICROSEMI CORPORATION,

                Third-Party Defendant.

**TO:**    Broadcom Corporation
        5300 California Avenue
        Irvine, California 92617
        Tel: (949) 926-5000

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

        SEE ATTACHED SCHEDULE A LISTING DOCUMENTS FOR PRODUCTION OR INSPECTION AND COPYING

| PLACE | DATE AND TIME |
|---|---|
| Chadbourne & Parke LLP, 350 South Grand Avenue, Suite 3300, Los Angeles, CA 90071 | February 21, 2008 at 4:00 pm. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

      Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE  (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Dennis Hopkins_ Attorney for Plaintiffs and Third-Defendant | February 6, 2008 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Dennis Hopkins, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza, New York, NY 10112
Tel: (212) 408-5100  Dhopkins@Chadbourne.com

        (See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

EX. A, pg. 5

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|

SERVED

| VED ON (PRINT NAME) | | MANNER OF SERVICE |
|---|---|---|

| SERVED BY (PRINT NAME) | | TITLE |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
    (1) Avoiding Undue Burden or Expense; Sanctions.
A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which m— include lost earnings and reasonable attorney's fees — on a party or attorney who comply.
    (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
        (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
    (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
        (i) fails to allow a reasonable time to comply;
        (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
        (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
        (i) disclosing a trade secret or other confidential research, development, or commercial information;
        (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
        (iii) a person who is neither a party nor a party's officer to incur substantial e to travel more than 100 miles to attend trial.
    C specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
    (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
    (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        (i) expressly make the claim; and
        (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) Information Produced. If information produced in response to a subpoena IS subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EX. A, p. 6

## SCHEDULE A

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure and the Local Civil Rules of the US District Courts for the Southern District of New York and the Central District of California, Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd. (collectively "PowerDsine") and Third-Party Defendant Microsemi Corporation ("Microsemi" or, together with PowerDsine, "Plaintiffs") request that Broadcom Corporation ("Broadcom") produce for inspection and copying each of the following categories of documents and things that are found in your possession, custody or control. Plaintiffs request that Broadcom produce the documents and things for inspection and copying at the office of Plaintiffs' counsel, Chadbourne & Parke LLP, 350 South Grand Avenue, Suite 3300, Los Angeles, CA 90071, on February 21, 2008 at 4:00 pm or at such other time and place as counsel for the respective parties shall agree or as the Court may order.

## DEFINITIONS OF TERMS

As used in the requests for production stated herein, the following terms shall have the scope and meaning indicated:

1.      "Defendants" refers to and includes AMI Semiconductor, Inc. and AMI Semiconductor Belgium BVBA, individually and/or jointly, and any and all companies, corporations, partnerships or other business entities which the Defendants own, in whole or in part, or to any degree, directly or indirectly, control or exercise control of, in whole or in part, including any and all subsidiary, sister, predecessor or successor companies, corporations, partnerships, affiliates, or joint ventures with other natural persons, corporations, partnerships or other business entities, or any affiliates or divisions thereof, and the directors, officers, agents,

*EX. A, pg. 7*

employees, partners and attorneys of any of the foregoing, including all persons acting or purporting to act on behalf of or who are subject to the direction and control of any of the foregoing, to the extent that they are or have been involved in any way with the subject matter of the following requests for production of documents and things.  Use of the term "Defendants" includes both "any" defendant and "all" defendants (and/or counterclaim-plaintiffs).

2.      "PowerDsine" refers to and includes the named Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd.

3.      "Plaintiffs" refers to PowerDsine, Inc., PowerDsine, Ltd. and, for the purpose of this discovery request and any response thereto, Third-Party Defendant Microsemi Corporation, individually and/or collectively.

4.      "Broadcom" means Broadcom Corporation and any and all companies, corporations, partnerships or other business entities which Broadcom Corporation owns, in whole or in part, or to any degree, directly or indirectly, controls or exercises control of, in whole or in part, including any and all subsidiary, sister, predecessor or successor companies, corporations, partnerships, affiliates, or joint ventures with other natural persons, corporations, partnerships or other business entities, or any affiliates or divisions thereof, and the directors, officers, agents, employees, partners and attorneys of any of the foregoing, including all persons acting or purporting to act on behalf of or who are subject to the direction and control of any of the foregoing.

5.      "You" or "your" means or refers to Broadcom Corporation.

6.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation,

4

*EX. A, pg. 8*

electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

8.      When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

9.      When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

10.     The term "person" is defined as any natural person or any business, legal or governmental entity or association.

11.     The term "concerning" means relating to, referring to, describing, evidencing or constituting.

12.     The following rules of construction apply to all discovery requests:

      a.      All/each.  The terms "all" and "each" shall be construed as all and each;

      b.      And/or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

      c.      Number.  The use of the singular form of any word includes the plural and vice versa;

      d.      "Any" shall be construed to include "all" and vice-versa;

In addition:

5

EX. A, pg. 9

    e.    the present tense shall be construed to include the past tense and vice-versa; and

    f.    the masculine shall be construed to include the feminine and vice-versa.

13.    The term "Power-Over-Ethernet integrated circuit product" refers to any integrated circuit product, or any product containing integrated circuitry, which is a component of any system which provides or is capable of providing power and data over Ethernet networks.

14.    The term "PSE" means "Power Sourcing Equipment" as that term is commonly used and understood in the semiconductor manufacturing and sales industry.

## GENERAL INSTRUCTIONS

1.    You shall produce all responsive documents and things.

2.    Should You withhold any documents or things responsive to these requests, You are requested to identify (as defined above) each document or thing withheld and furnish the following additional information:

    a.    the number(s) of the request(s) to which the document or thing is responsive;

    b.    identify each person to whom the document or thing was disclosed;

    c.    identify the person(s) who maintain(s) or maintained custody of the document or thing; and

    d.    state the basis for withholding the document or thing.

3.    If any material in documents produced is redacted because it is not responsive to any request, is withheld due to a claim of privilege, is responsive to a request but is withheld on grounds other than privilege, or is withheld pursuant to a protective order, the person producing

6

*EX. A, Pg. 10*

the redacted documents shall indicate either on the document itself or on an accompanying attachment:

        a.    how many lines have been redacted and where on the page such redaction begins and ends;

        b.    the basis for the redaction(s);

        c.    the basis(es) for any claim of privilege, pursuant to Fed. R. Civ. P. 26(b)(5), along with a description of the substance of the privileged material; and

        d.    the basis for the redaction and the request to which it relates, if the material redacted is responsive to a request but is withheld on grounds other than a claim of privilege (such as relevance).

4.    Each document or thing should be segregated and identified by the request to which it is primarily responsive or produced as they are kept in the usual course of business.

5.    Should You find the meaning of any term in these requests to be unclear, then You should assume a reasonable meaning, state that assumed meaning, and respond to the request on the basis of that assumed meaning.

6.    If You are unable to comply fully with any request herein, You should comply to the extent possible and provide a detailed explanation as to why it cannot comply fully.

7.    These discovery requests are deemed to be continuing in nature and You are requested to amend and/or supplement the responses hereto in accordance with the Federal Rules of Civil Procedure.

EX. A, pg. 11

## DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 1:

All documents in existence since January 1, 2004 sufficient to evidence all/any document destruction and/or retention policies of Broadcom and/or document destruction and/or retention policies of any facility(ies) used and/or occupied by Broadcom, including documents in electronic form.

### DOCUMENT REQUEST NO. 2:

All documents in existence since January 1, 2004 sufficient to evidence any communications between Broadcom and any current and/or former employee of PowerDsine, Inc., PowerDsine, Ltd. and/or Microsemi Corporation concerning employment and/or the making, using, selling, offering for sale and/or planned offer for sale of any Power-over-Ethernet integrated circuit product.

### DOCUMENT REQUEST NO. 3:

All documents concerning any communications between Broadcom and AMIS concerning PowerDsine, any products designed and/or sold by PowerDsine and/or Power-over-Ethernet products.

### DOCUMENT REQUEST NO. 4:

All documents concerning any communications between Broadcom and AMIS concerning PowerDsine and/or any litigation and/or dispute between AMIS and PowerDsine.

### DOCUMENT REQUEST NO. 5:

All documents concerning any communications between Broadcom and Shimon Elkayam concerning the making, using, designing, selling, offering for sale and/or planned offer for sale of any Power-over-Ethernet integrated circuit product.

EX. A, pg. 12

**DOCUMENT REQUEST NO. 6:**

All documents, including but not limited to email documents, sent by Shimon Elkayam to AMIS.

**DOCUMENT REQUEST NO. 7:**

All documents concerning any communications between Shimon Elkayam and Broadcom concerning the recruitment, hiring and/or employment process of Shimon Elkayam, including e-mails sent and received, any current and/or prior agreement(s) between Mr. Elkayam and Broadcom and all documents submitted by Broadcom and/or Mr. Elkayam concerning the application for and/or obtaining a visa for Mr. Elkayam to work in the United States.

**DOCUMENT REQUEST NO. 8:**

All documents concerning any communications between any Broadcom engineers and AMIS concerning the making, designing, using, selling, offering for sale or plan to offer for sale of any Power-over-Ethernet integrated circuit product.

**DOCUMENT REQUEST NO. 9:**

All documents concerning any communications between Broadcom and Shimon Elkayam concerning PowerDsine and/or any products designed and/or sold by PowerDsine or the design of Power-over-Ethernet products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning any communications between Broadcom and Sharon Dagan, a former employee of AMIS, concerning the making, using, selling, offering for sale and/or planned offer for sale of any Power-over-Ethernet integrated circuit product.

**DOCUMENT REQUEST NO. 11:**

All documents provided by AMIS to Broadcom concerning any litigation, dispute and/or potential dispute between AMIS and PowerDsine.

EX. A, pg. 13

Exhibit B

1    LATHAM & WATKINS LLP
       Dean G. Dunlavey (Bar No. 115530)
2        *dean.dunlavey@lw.com*
       Eli T. Ticatch (Bar No. 234108)
3        *eli.ticatch@lw.com*
   650 Town Center Drive, 20th Floor
4    Costa Mesa, California 92626-1925
   Telephone: +1.714.540.1235
5    Facsimile: +1.714.755.8290

6    Attorneys for
   BROADCOM CORPORATION

7

8                 **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11   POWERDSINE, INC. and          CASE NO. 07 CV 6014 (SAS) (FM)
   POWERDSINE, LTD.,
12     .                           **BROADCOM CORPORATION'S**
                         **OBJECTIONS AND RESPONSES TO**
13             Plaintiffs,        **PLAINTIFFS POWERDSINE, INC. AND**
                         **POWERDSINE, LTD.'S SUBPOENA**
14       v.                        **FOR PRODUCTION OR INSPECTION**
                         **AND COPYING**
15    AMI SEMICONDUCTOR, INC. and AMI
   SEMICONDUCTOR BELGIUM BVBA,     Date:     February 21, 2008
16            Defendants.       Time:     4:00 p.m.
                         Place:    Chadbourne & Parke LLP
17

18                              Trial Date:

19   AND RELATED CROSS ACTION.

20

21         Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure,

22 Broadcom Corporation ("Broadcom") presents its objections to the subpoena *duces tecum*

23 and to the Document Requests therein (collectively, the "subpoena") as follows:

24                      **GENERAL OBJECTIONS**

25         The following general objections and statements apply to each of the

26 particular Document Requests propounded by Plaintiffs and are hereby incorporated into

27 the response to each specific Document Request. The fact that a specific response may

28

LATHAM&WATKINS ᴸᴸᴾ
ATTORNEYS AT LAW
ORANGE COUNTY
OC\937564.3                                           BROADCOM CORPORATION'S
                                             OBJECTION TO SUBPOENA

*EX.B, pg. 15*

1    mention one or more of the general objections does not mean that the other general

2    objections do not apply to that Document Request.

3        1.    Broadcom objects to the time and location of the production set forth

4    in the subpoena. The subpoena as drafted is unduly burdensome, oppressive, and

5    harassing. The subpoena's attempt to require Broadcom to conduct an extensive search

6    of its records in numerous facilities for broad categories of documents and produce them

7    by February 21, 2008 is neither feasible nor reasonable. The unfocused nature of the

8    subpoena reflects a failure to comply with the requirement in Rule 45, Federal Rules of

9    Civil Procedure, that "A party or attorney responsible for issuing and serving a subpoena

10   must take reasonable steps to avoid imposing undue burden or expense on a person

11   subject to the subpoena."

12       2.    Broadcom objects to the Definitions of Terms and General

13   Instructions set forth in the subpoena to the extent they purport to impose duties and

14   obligations inconsistent with and/or in excess of those imposed on a responding party

15   under the Federal Rules of Civil Procedure and/or the application Local Rules.

16   Broadcom notes that while the subpoena purports to define the terms "Defendants,"

17   "Plaintiffs," "your," "to identify," and "PSE," those terms are not used in any of the

18   Document Requests. Broadcom further notes that the subpoena does not provide a

19   definition for the term "AMIS," although that undefined term is used in six of the eleven

20   Document Requests.

21       3.    Broadcom objects to the subpoena to the extent it seeks information

22   and/or documents protected by the attorney-client privilege, the work-product doctrine, or

23   any other applicable privilege, doctrine or privacy right afforded to Broadcom or its

24   employees by federal, state, or local law or regulation. To the extent Broadcom

25   inadvertently discloses any information protected by the attorney-client privilege, the

26   work-product doctrine, or any other privilege or protection, such production is not

27   intended to and shall not operate as a waiver of any applicable privilege with respect to

28   that information or document, or any other information or documents. In the case of any

*EX. B, pg. 16*

1  such inadvertent production, Broadcom reserves the right to demand that Plaintiffs and

2  any other recipient return any such document and all copies thereof. Insofar as the

3  disclosure of any information or document by Broadcom in response to a Document

4  Request may be deemed to be a waiver of any privilege or right, such waiver shall be

5  deemed to be a limited waiver with respect to that particular responsive information or

6  document.

7       4.    Broadcom objects to the subpoena to the extent it attempts or

8  purports to require disclosure of information and/or documents containing proprietary,

9  confidential, and/or private information, and declines to provide any such information

10  and/or documents that could subject Broadcom to competitive disadvantage or business

11  injury or violate confidentiality agreements or the privacy interests of third parties.

12  Broadcom reserves the right to withhold production of documents that may be subject to

13  confidentiality agreements with third parties unless and until Broadcom is authorized by

14  those third parties to produce such documents, as necessary.

15       5.    Broadcom objects to the subpoena to the extent it is vague,

16  ambiguous, and/or fails to describe the documents requested with reasonable

17  particularity.

18       6.    To the extent that Broadcom objects to a Document Request as

19  vague and ambiguous such that Broadcom is required to speculate on the scope of the

20  Request in the context of this action, Broadcom may nonetheless respond to such

21  Request, giving it what Broadcom believes to be a reasonable interpretation or

22  construction. Broadcom, however, shall not be deemed bound by any inconsistent

23  interpretation applied by Plaintiffs. Further, Broadcom's determination or failure to

24  determine that information or documents may or may not be responsive to a specific

25  Request shall not be deemed in any manner an admission by Broadcom, and Broadcom

26  shall not be deemed bound by any inconsistent interpretation applied by Plaintiffs. To

27  the extent that Plaintiffs assert a different interpretation, Broadcom reserves its rights to

28  further object to the Request on additional grounds to that interpretation.

EX. B, pg. 17

1        7.     Broadcom objects to the subpoena to the extent it is overbroad, unduly burdensome, oppressive and/or seeks information or documents that are neither relevant to the parties' claims or defenses in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

        8.     Broadcom objects to the subpoena to the extent it calls for the production of documents or information that is equally available from a party to the litigation, such as AMI Semiconductor, Inc. or AMI Semiconductor Belgium BVBA, as such production is unwarranted and imposes an undue burden and expense upon Broadcom.

        9.     Broadcom objects to the subpoena to the extent it calls for the production of documents or information without any limitation as to the date of the documents or information.

        10.     Broadcom objects to the subpoena to the extent it seeks information beyond what is available from a reasonable search of Broadcom's files likely to contain relevant or responsive documents.

        11.     Broadcom objects to the subpoena to the extent it seeks electronically stored information from sources not reasonably accessible because of undue burden or cost.

## DOCUMENT REQUESTS AND RESPONSES

Subject to the General Objections set forth above, which are incorporated by reference into Broadcom Corporation's response to each Document Request below, Broadcom Corporation responds to Plaintiffs' Document Requests as follows:

**DOCUMENT REQUEST NO. 1:**

All documents in existence since January 1, 2004 sufficient to evidence all/any document destruction and/or retention policies of Broadcom and/or document destruction and/or retention policies of any facility(ies) used and/or occupied by Broadcom, including documents in electronic form.

*EX. B, pg. 18*

1    **RESPONSE TO DOCUMENT REQUEST NO. 1:**

2           Broadcom incorporates the General Objections as though set forth in their

3    entirety herein.  Broadcom further objects that, as an entity that is not a party to the

4    litigation, its document destruction and/or retention policies are unrelated to the subject

5    matter of this litigation.  Accordingly, this Document Request seeks information or

6    documents that are neither relevant to the parties' claims or defenses in this litigation nor

7    reasonably calculated to lead to the discovery of admissible evidence.  Broadcom further

8    objects that this Document Request is vague and ambiguous as to the phrases "[a]ll

9    documents . . . sufficient to evidence all/any document destruction and/or retention

10   policies of Broadcom" and "any facility(ies) used and/or occupied by Broadcom," and on

11   the ground that it fails to specify with reasonable particularity the documents or category

12   of documents sought.

13   **DOCUMENT REQUEST NO. 2:**

14          All documents in existence since January 1, 2004 sufficient to evidence any

15   communications between Broadcom and any current and/or former employee of

16   PowerDsine, Inc., PowerDsine, Ltd. and/or Microsemi Corporation concerning

17   employment and/or the making, using, selling, offering for sale and/or planned offer for

18   sale of any Power-over-Ethernet integrated circuit product.

19   **RESPONSE TO DOCUMENT REQUEST NO. 2:**

20          Broadcom incorporates the General Objections as though set forth in their

21   entirety herein.  Broadcom further objects that this Document Request is vague and

22   ambiguous as to the phrase "[a]ll documents . . . sufficient to evidence any

23   communications," and on the ground that it fails to specify with reasonable particularity

24   the documents or category of documents sought.  Broadcom further objects that this

25   Request is overbroad, unduly burdensome, oppressive and/or seeks information or

26   documents that are neither relevant to the parties' claims or defenses in this litigation nor

27   reasonably calculated to lead to the discovery of admissible evidence.

28

*EX. B, pg. 19*

1  **DOCUMENT REQUEST NO. 3:**

2  All documents concerning any communications between Broadcom and

3  AMIS concerning PowerDsine, any products designed and/or sold by PowerDsine and/or

4  Power-over-Ethernet products.

5  **RESPONSE TO DOCUMENT REQUEST NO. 3:**

6  Broadcom incorporates the General Objections as though set forth in their

7  entirety herein.  Broadcom further objects that the term "AMIS" is not defined.

8  Broadcom further objects to the Request on the ground that it seeks documents from a

9  non-party that should be equally available from a party to the litigation.  Broadcom notes

10  that, as written, this Request would cover "[a]ll documents concerning any

11  communications between Broadcom and AMIS concerning . . . Power-over-Ethernet

12  products."  Broadcom objects that this Request is overbroad, unduly burdensome,

13  oppressive and/or seeks information or documents that are neither relevant to the parties'

14  claims or defenses in this litigation nor reasonably calculated to lead to the discovery of

15  admissible evidence.

16  **DOCUMENT REQUEST NO. 4:**

17  All documents concerning any communications between Broadcom and

18  AMIS concerning PowerDsine and/or any litigation and/or dispute between AMIS and

19  PowerDsine.

20  **RESPONSE TO DOCUMENT REQUEST NO. 4:**

21  Broadcom incorporates the General Objections as though set forth in their

22  entirety herein.  Broadcom further objects that the term "AMIS" is not defined.

23  Broadcom further objects to the Request on the ground that it seeks documents from a

24  non-party that should be equally available from a party to the litigation.  Broadcom

25  further objects that this Request is overbroad, unduly burdensome, oppressive and/or

26  seeks information or documents that are neither relevant to the parties' claims or defenses

27  in this litigation nor reasonably calculated to lead to the discovery of admissible

28  evidence.

*EX. B, Pg. 20*

**DOCUMENT REQUEST NO. 5:**

All documents concerning any communications between Broadcom and Shimon Elkayam concerning the making, using, designing, selling, offering for sale and/or planned offer for sale of any Power-over-Ethernet integrated circuit product.

**RESPONSE TO DOCUMENT REQUEST NO. 5:**

Broadcom incorporates the General Objections as though set forth in their entirety herein. Mr. Elkayam is a Broadcom employee. Broadcom notes that, as written, this Request would cover "[a]ll documents concerning any communications" between Broadcom and its own employee "concerning the making, using, designing, selling, offering for sale and/or planned offer for sale of any Power-over-Ethernet integrated circuit product." Broadcom objects that this Request is overbroad, unduly burdensome, oppressive and/or seeks information or documents that are neither relevant to the parties' claims or defenses in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

**DOCUMENT REQUEST NO. 6:**

All documents, including but not limited to email documents, sent by Shimon Elkayam to AMIS.

**RESPONSE TO DOCUMENT REQUEST NO. 6:**

Broadcom incorporates the General Objections as though set forth in their entirety herein. Broadcom further objects that the term "AMIS" is not defined. Broadcom further objects to the Request on the ground that it seeks documents from a non-party that should be equally available from a party to the litigation. Broadcom further objects that this Request is overbroad, unduly burdensome, oppressive and/or seeks information or documents that are neither relevant to the parties' claims or defenses in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

*EX. B, pg. 21*

1    **DOCUMENT REQUEST NO. 7:**

2          All documents concerning any communications between Shimon Elkayam

3   and Broadcom concerning the recruitment, hiring and/or employment process of Shimon

4   Elkayam, including e-mails sent and received, any current and/or prior agreement(s)

5   between Mr. Elkayam and Broadcom and all documents submitted by Broadcom and/or

6   Mr. Elkayam concerning the application for and/or obtaining a visa for Mr. Elkayam to

7   work in the United States.

8    **RESPONSE TO DOCUMENT REQUEST NO. 7:**

9          Broadcom incorporates the General Objections as though set forth in their

10   entirety herein.  Broadcom further objects that this Request is overbroad, unduly

11   burdensome, oppressive and/or seeks information or documents that are neither relevant

12   to the parties' claims or defenses in this litigation nor reasonably calculated to lead to the

13   discovery of admissible evidence.  Broadcom further objects that this Request is vague

14   and ambiguous as to the phrase "employment process."

15   **DOCUMENT REQUEST NO. 8:**

16          All documents concerning any communications between any Broadcom

17   engineers and AMIS concerning the making, designing, using, selling, offering for sale or

18   plan to offer for sale of any Power-over-Ethernet integrated circuit product.

19   **RESPONSE TO DOCUMENT REQUEST NO. 8:**

20          Broadcom incorporates the General Objections as though set forth in their

21   entirety herein.  Broadcom further objects that the term "AMIS" is not defined.

22   Broadcom further objects to the Request on the ground that it seeks documents from a

23   non-party that should be equally available from a party to the litigation.  Broadcom

24.   further objects that this Request is overbroad, unduly burdensome, oppressive and/or

25   seeks information or documents that are neither relevant to the parties' claims or defenses

26   in this litigation nor reasonably calculated to lead to the discovery of admissible

27   evidence.

28

*EX. B, pg. 22*

1    **DOCUMENT REQUEST NO. 9:**

2           All documents concerning any communications between Broadcom and

3    Shimon Elkayam concerning PowerDsine and/or any products designed and/or sold by

4    PowerDsine or the design of Power-over-Ethernet products.

5    **RESPONSE TO DOCUMENT REQUEST NO. 9:**

6           Broadcom incorporates the General Objections as though set forth in their

7    entirety herein.  Mr. Elkayam is a Broadcom employee.  Broadcom notes that, as written,

8    this Request would cover "[a]ll documents concerning any communications" between

9    Broadcom and its own employee "concerning . . . the design of Power-over-Ethernet

10   integrated circuit products."  Broadcom objects that this Request is overbroad, unduly

11   burdensome, oppressive and/or seeks information or documents that are neither relevant

12   to the parties' claims or defenses in this litigation nor reasonably calculated to lead to the

13   discovery of admissible evidence.

14   **DOCUMENT REQUEST NO. 10:**

15          All documents concerning any communications between Broadcom and

16   Sharon Dagan, a former employee of AMIS, concerning the making, using, selling,

17   offering for sale and/or planned offer for sale of any Power-over-Ethernet integrated

18   circuit product.

19   **RESPONSE TO DOCUMENT REQUEST NO. 10:**

20          Broadcom incorporates the General Objections as though set forth in their

21   entirety herein.  Broadcom further objects that the term "AMIS" is not defined.

22   Broadcom further objects to the Request on the ground that it seeks documents from a

23   non-party that should be equally available from a party to the litigation.  Broadcom

24   further objects that this Request is overbroad, unduly burdensome, oppressive and/or

25   seeks information or documents that are neither relevant to the parties' claims or defenses

26   in this litigation nor reasonably calculated to lead to the discovery of admissible

27   evidence.

28

*EX. B, pg. 23*

1   **DOCUMENT REQUEST NO. 11:**

2         All documents provided by AMIS to Broadcom concerning any litigation,

3   dispute and/or potential dispute between AMIS and PowerDsine.

4   **RESPONSE TO DOCUMENT REQUEST NO. 11:**

5         Broadcom incorporates the General Objections as though set forth in their

6   entirety herein.  Broadcom further objects that the term "AMIS" is not defined.

7   Broadcom further objects to the Request on the ground that it seeks documents from a

8   non-party that should be equally available from a party to the litigation.  Broadcom

9   further objects that this Request is overbroad, unduly burdensome, oppressive and/or

10  seeks documents that are neither relevant to the parties' claims or defenses in this

11  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

12  Dated: February 16, 2008                    Respectfully submitted,

13                                              LATHAM & WATKINS LLP
                                                Dean G. Dunlavey
14

15

16  By _____
                                                Dean G. Dunlavey
17                                              Attorneys for Non-Party
                                                BROADCOM CORPORATION
18

19

20

21

22

23

24

25

26

27

28

*EX. B, pg. 24*

1

## PROOF OF SERVICE

2

I am employed in the County of Orange, State of California.  I am over the age of 18
3  years and not a party to this action.  My business address is Latham & Watkins LLP, 650 Town Center
Drive, 20th Floor, Costa Mesa, CA  92626-1925.

4

On **February 19, 2008**, I served the following document described as:

5

**BROADCOM CORPORATION'S OBJECTIONS AND RESPONSES TO
PLAINTIFFS POWERDSINE, INC. AND POWERDSINE, LTD.'S SUBPOENA
FOR PRODUCTION OR INSPECTION AND COPYING**

6

7

by serving a true copy of the above-described document in the following manner:

8

## BY U.S. MAIL

9

I am familiar with the office practice of Latham & Watkins LLP for collecting and
processing documents for mailing with the United States Postal Service.  Under that practice, documents
10  are deposited with the Latham & Watkins LLP personnel responsible for depositing documents with the
United States Postal Service; such documents are delivered to the United States Postal Service on that
11  same day in the ordinary course of business, with postage thereon fully prepaid.  I deposited in Latham &
Watkins LLP' interoffice mail a sealed envelope or package containing the above-described document
12  and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for
collecting and processing documents for mailing with the United States Postal Service:

13

| | |
|---|---|
| Dennis Hopkins, Esq. | |
| Chadbourne & Parke LLP | Chadbourne & Parke LLP |
| 30 Rockefeller Plaza | 350 South Grand Avenue, Suite 3300 |
| New York, NY 10112 | Los Angeles, CA 90071 |

14

15

16

17

I declare that I am employed in the office of a member of the Bar of, or permitted to
practice before, this Court at whose direction the service was made and declare under penalty of perjury
18  under the laws of the State of California that the foregoing is true and correct.

19

Executed on **February 19, 2008**, at Costa Mesa, California.

20

*Deborah Rickert*

21

Deborah Rickert

22

23

24

25

26

27

28

BROADCOM CORPORATION'S
OBJECTION TO SUBPOENA

EX. B, pg. 25

# Exhibit C

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100 fax (212) 541-5369

# CHADBOURNE
# & PARKE LLP

**Paul Tanck**
**direct tel** 212-408-1116
PTanck@chadbourne.com

July 30, 2008

*Via Email*
Dean Dunlavey, Esq.
Latham and Watkins, LLP
650 Town Center Drive
20th Floor
Costa Mesa CA 92626-192

Re: *PowerDsine, Inc. v. AMI Semiconductor, Inc.,*
No. 07cv6014 (S.D.N.Y.) (SAS)(FM)

Dear Dean:

I am writing Pursuant to Rule 37 of the Federal Rules of Civil Procedure and L.R. 37-1 of the Local Rules of the United States District Court for the Central District of California to request a telephonic conference to discuss Broadcom Corporation's Objections And Responses To Plaintiffs PowerDsine, Inc. And PowerDsine, Ltd.'s Subpoena For Production Or Inspection And Copying ("Broadcom's Objections") served February 19, 2008.

On February 6, 2008 Plaintiffs PowerDsine, Inc. And PowerDsine, Ltd. ("PowerDsine") served a subpoena *duces tecum* ("Subpoena") to Broadcom requesting the inspection and copying of documents that are found in Broadcom's possession, custody or control. Exhibit A. Broadcom served its objections and response on February 19, 2008. Exhibit B.

To date, Broadcom Corporation has produced no documents in response to PowerDsine's Subpoena.

With the close of discovery in the *PowerDsine v. AMIS* litigation scheduled for August 29, 2008, it is necessary that Broadcom begin its production of documents immediately. In the interests of cooperation and to avoid imposing undue burden on Broadcom we will agree to narrow PowerDsine's Subpoena to the following three requests:

1) Communications sent by or received from Shimon Elkayam ("Mr. Elkayam") concerning his involvement in the development of BCM5910x products. [*See* Subpoena Document Request No. 5]

New York  Washington  Los Angeles  Houston  London (a multinational partnership)  Moscow  Warsaw (a Polish partnership)  Kyiv  Almaty  Beijing

*EX. C/ p9. 27*

# CHADBOURNE
## & PARKE LLP

Dean Dunlavey, Esq.
Latham and Watkins, LLP                    -2-                         July 30, 2008

    2) Documents concerning the recruitment and/or hiring of Mr. Elkayam by
       Broadcom (or any entity affiliated with Broadcom), including e-mails, any
       agreement(s) between Shimon Elkayam and Broadcom, and all documents
       submitted by Broadcom and/or Mr. Elkayam concerning the applying for and/or
       obtaining a visa to permit Mr. Elkayam to work in the United States.
       [*See* Subpoena Document Request No. 7]

    3) Communications sent by or received from Mr. Elkayam concerning
       PowerDsine's Power-over-Ethernet products.
       [*See* Subpoena Document Request No. 9]

       The above document requests are not overbroad and do not exceed the fair bounds
of discovery.  One of the purposes of Federal Rule of Civil Procedure 45 is "to facilitate
access outside the deposition procedure provided by Rule 30 to documents and other
information in the possession of persons who are not parties...."  Advisory Committee Notes
to 1991 to Amendment.  Further, the Advisory Committee Notes to Rule 45 state that "[t]he
non-party witness is subject to the same scope of discovery under this rule as that person
would be as a party to whom a request is addressed pursuant to Rule 34."

       Please let me know if you are available by telephone on August 1st to discuss the
above requests.  If not, please let me know when you would be available.  Because of the
rapidly approaching deadline for discovery in the litigation in the Southern District of New
York, I would appreciate any efforts to confer as soon as possible.

                                 Very truly yours,

                                 Paul Tanck

Enclosures

cc:  Joseph Mais, Esq.
     Walter Hanchuk, Esq.

EX. C, pg. 28

# EXHIBIT A

EX. C, pg. 30

Issued by the

# UNITED STATES DISTRICT COURT

| CENTRAL | DISTRICT OF | CALIFORNIA |

| | |
|---|---|
| POWERDSINE, INC. and POWERDSINE, LTD., <br> Plaintiffs, <br> v. <br> AMI SEMICONDUCTOR, INC. and <br> AMI SEMICONDUCTOR BELGIUM BVBA, <br> Defendants. | **SUBPOENA IN A CIVIL CASE** <br><br> Case Number: 07 CV 6014 (SAS)(FM) <br> U.S. District Court, Southern District of New York |
| AMI SEMICONDUCTOR, INC. and <br> AMI SEMICONDUCTOR BELGIUM BVBA, <br> Counterclaim-Plaintiffs, <br> v. <br> POWERDSINE, INC. and POWERDSINE, LTD., <br> Counterclaim-Defendants, <br> and <br> MICROSEMI CORPORATION, <br> Third-Party Defendant. | |

TO:     Broadcom Corporation
         5300 California Avenue
         Irvine, California 92617
         Tel: (949) 926-5000

◻ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

◻ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
     SEE ATTACHED SCHEDULE A LISTING DOCUMENTS FOR PRODUCTION OR INSPECTION AND COPYING

| PLACE | DATE AND TIME |
|---|---|
| Chadbourne & Parke LLP, 350 South Grand Avenue, Suite 3300, Los Angeles, CA 90071 | February 21, 2008 at 4:00 pm. |

◻ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*   Attorney for Plaintiffs and Third-Defendant | February 6, 2008 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
     Dennis Hopkins, Esq.
     Chadbourne & Parke LLP
     30 Rockefeller Plaza, New York, NY 10112
     Tel: (212) 408-5100 Dhopkins@Chadbourne.com

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

*EX.C, pg. 31*

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | |
|---|---|
| VED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　　　　　DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
　(1) Avoiding Undue Burden or Expense; Sanctions.
A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
　(2) Command to Produce Materials or Permit Inspection.
　(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
　(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
　　(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
　　(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
　(3) Quashing or Modifying a Subpoena.
　(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
　　(i) fails to allow a reasonable time to comply;
　　(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
　　(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
　　(iv) subjects a person to undue burden.
　(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
　　(i) disclosing a trade secret or other confidential research, development, or commercial information;
　　(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
　　(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
　　(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
　　(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
　　(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO SUBPOENA.
　(1) Producing Documents or Electronically Stored Information.
These procedures apply to producing documents or electronically stored information:
　(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
　(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
　(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
　(D) Inaccessible Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
　(2) Claiming Privilege or Protection.
　(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
　　(i) expressly make the claim; and
　　(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
　(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EX C.) pg. 32

## SCHEDULE A

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure and the Local Civil Rules of the US District Courts for the Southern District of New York and the Central District of California, Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd. (collectively "PowerDsinc") and Third-Party Defendant Microsemi Corporation ("Microsemi" or, together with PowerDsine, "Plaintiffs") request that Broadcom Corporation ("Broadcom") produce for inspection and copying each of the following categories of documents and things that are found in your possession, custody or control.  Plaintiffs request that Broadcom produce the documents and things for inspection and copying at the office of Plaintiffs' counsel, Chadbourne & Parke LLP, 350 South Grand Avenue, Suite 3300, Los Angeles, CA 90071, on February 21, 2008 at 4:00 pm or at such other time and place as counsel for the respective parties shall agree or as the Court may order.

## DEFINITIONS OF TERMS

As used in the requests for production stated herein, the following terms shall have the scope and meaning indicated:

1.       "Defendants" refers to and includes AMI Semiconductor, Inc. and AMI Semiconductor Belgium BVBA, individually and/or jointly, and any and all companies, corporations, partnerships or other business entities which the Defendants own, in whole or in part, or to any degree, directly or indirectly, control or exercise control of, in whole or in part, including any and all subsidiary, sister, predecessor or successor companies, corporations, partnerships, affiliates, or joint ventures with other natural persons, corporations, partnerships or other business entities, or any affiliates or divisions thereof, and the directors, officers, agents,

*EX. C, pg. 33*

employees, partners and attorneys of any of the foregoing, including all persons acting or purporting to act on behalf of or who are subject to the direction and control of any of the foregoing, to the extent that they are or have been involved in any way with the subject matter of the following requests for production of documents and things. Use of the term "Defendants" includes both "any" defendant and "all" defendants (and/or counterclaim-plaintiffs).

2.     "PowerDsine" refers to and includes the named Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd.

3.     "Plaintiffs" refers to PowerDsine, Inc., PowerDsine, Ltd. and, for the purpose of this discovery request and any response thereto, Third-Party Defendant Microsemi Corporation, individually and/or collectively.

4.     "Broadcom" means Broadcom Corporation and any and all companies, corporations, partnerships or other business entities which Broadcom Corporation owns, in whole or in part, or to any degree, directly or indirectly, controls or exercises control of, in whole or in part, including any and all subsidiary, sister, predecessor or successor companies, corporations, partnerships, affiliates, or joint ventures with other natural persons, corporations, partnerships or other business entities, or any affiliates or divisions thereof, and the directors, officers, agents, employees, partners and attorneys of any of the foregoing, including all persons acting or purporting to act on behalf of or who are subject to the direction and control of any of the foregoing.

5.     "You" or "your" means or refers to Broadcom Corporation.

6.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation,

4

EX.C, pg. 34

electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

8.    When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

9.    When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

10.    The term "person" is defined as any natural person or any business, legal or governmental entity or association.

11.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

12.    The following rules of construction apply to all discovery requests:

a.    All/each. The terms "all" and "each" shall be construed as all and each;

b.    And/or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

c.    Number. The use of the singular form of any word includes the plural and vice versa;

d.    "Any" shall be construed to include "all" and vice-versa;

In addition:

5

EX. C, pg. 35

e.   the present tense shall be construed to include the past tense and vice-versa; and

f.   the masculine shall be construed to include the feminine and vice-versa.

13.   The term "Power-Over-Ethernet integrated circuit product" refers to any integrated circuit product, or any product containing integrated circuitry, which is a component of any system which provides or is capable of providing power and data over Ethernet networks.

14.   The term "PSE" means "Power Sourcing Equipment" as that term is commonly used and understood in the semiconductor manufacturing and sales industry.

## GENERAL INSTRUCTIONS

1.   You shall produce all responsive documents and things.

2.   Should You withhold any documents or things responsive to these requests, You are requested to identify (as defined above) each document or thing withheld and furnish the following additional information:

a.   the number(s) of the request(s) to which the document or thing is responsive;

b.   identify each person to whom the document or thing was disclosed;

c.   identify the person(s) who maintain(s) or maintained custody of the document or thing; and

d.   state the basis for withholding the document or thing.

3.   If any material in documents produced is redacted because it is not responsive to any request, is withheld due to a claim of privilege, is responsive to a request but is withheld on grounds other than privilege, or is withheld pursuant to a protective order, the person producing

6

EX.C, pg. 36

the redacted documents shall indicate either on the document itself or on an accompanying attachment:

      a.    how many lines have been redacted and where on the page such redaction begins and ends;

      b.    the basis for the redaction(s);

      c.    the basis(es) for any claim of privilege, pursuant to Fed. R. Civ. P. 26(b)(5), along with a description of the substance of the privileged material; and

      d.    the basis for the redaction and the request to which it relates, if the material redacted is responsive to a request but is withheld on grounds other than a claim of privilege (such as relevance).

4.    Each document or thing should be segregated and identified by the request to which it is primarily responsive or produced as they are kept in the usual course of business.

5.    Should You find the meaning of any term in these requests to be unclear, then You should assume a reasonable meaning, state that assumed meaning, and respond to the request on the basis of that assumed meaning.

6.    If You are unable to comply fully with any request herein, You should comply to the extent possible and provide a detailed explanation as to why it cannot comply fully.

7.    These discovery requests are deemed to be continuing in nature and You are requested to amend and/or supplement the responses hereto in accordance with the Federal Rules of Civil Procedure.

7

*EX. C, pg. 37*

## DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 1:

All documents in existence since January 1, 2004 sufficient to evidence all/any document

destruction and/or retention policies of Broadcom and/or document destruction and/or retention

policies of any facility(ies) used and/or occupied by Broadcom, including documents in

electronic form.

### DOCUMENT REQUEST NO. 2:

All documents in existence since January 1, 2004 sufficient to evidence any communications

between Broadcom and any current and/or former employee of PowerDsine, Inc., PowerDsine,

Ltd. and/or Microsemi Corporation concerning employment and/or the making, using, selling,

offering for sale and/or planned offer for sale of any Power-over-Ethernet integrated circuit

product.

### DOCUMENT REQUEST NO. 3:

All documents concerning any communications between Broadcom and AMIS concerning

PowerDsine, any products designed and/or sold by PowerDsine and/or Power-over-Ethernet

products.

### DOCUMENT REQUEST NO. 4:

All documents concerning any communications between Broadcom and AMIS concerning

PowerDsine and/or any litigation and/or dispute between AMIS and PowerDsine.

### DOCUMENT REQUEST NO. 5:

All documents concerning any communications between Broadcom and Shimon Elkayam

concerning the making, using, designing, selling, offering for sale and/or planned offer for sale

of any Power-over-Ethernet integrated circuit product.

8

EX. C, pg. 38

**DOCUMENT REQUEST NO. 6:**

All documents, including but not limited to email documents, sent by Shimon Elkayam to AMIS.

**DOCUMENT REQUEST NO. 7:**

All documents concerning any communications between Shimon Elkayam and Broadcom concerning the recruitment, hiring and/or employment process of Shimon Elkayam, including e-mails sent and received, any current and/or prior agreement(s) between Mr. Elkayam and Broadcom and all documents submitted by Broadcom and/or Mr. Elkayam concerning the application for and/or obtaining a visa for Mr. Elkayam to work in the United States.

**DOCUMENT REQUEST NO. 8:**

All documents concerning any communications between any Broadcom engineers and AMIS concerning the making, designing, using, selling, offering for sale or plan to offer for sale of any Power-over-Ethernet integrated circuit product.

**DOCUMENT REQUEST NO. 9:**

All documents concerning any communications between Broadcom and Shimon Elkayam concerning PowerDsine and/or any products designed and/or sold by PowerDsine or the design of Power-over-Ethernet products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning any communications between Broadcom and Sharon Dagan, a former employee of AMIS, concerning the making, using, selling, offering for sale and/or planned offer for sale of any Power-over-Ethernet integrated circuit product.

**DOCUMENT REQUEST NO. 11:**

All documents provided by AMIS to Broadcom concerning any litigation, dispute and/or potential dispute between AMIS and PowerDsine.

9

*EX.C, pg. 39*

# EXHIBIT B

EX.C, pg. 40

1  LATHAM & WATKINS LLP
     Dean G. Dunlavey (Bar No. 115530)
2        dean.dunlavey@lw.com
     Eli T. Ticatch (Bar No. 234108)
3        eli.ticatch@lw.com
   650 Town Center Drive, 20th Floor
4  Costa Mesa, California 92626-1925
   Telephone: +1.714.540.1235
5  Facsimile: +1.714.755.8290

6  Attorneys for
   BROADCOM CORPORATION
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 | POWERDSINE, INC. and          | CASE NO. 07 CV 6014 (SAS) (FM)
   | POWERDSINE, LTD.,             |
12 |                              | **BROADCOM CORPORATION'S
   |                              | OBJECTIONS AND RESPONSES TO
13 |              Plaintiffs,      | PLAINTIFFS POWERDSINE, INC. AND
   |                              | POWERDSINE, LTD.'S SUBPOENA
14 |         v.                   | FOR PRODUCTION OR INSPECTION
   |                              | AND COPYING**
15 | AMI SEMICONDUCTOR, INC. and AMI|
   | SEMICONDUCTOR BELGIUM BVBA,   |
16 |                              | Date:    February 21, 2008
   |              Defendants.      | Time:    4:00 p.m.
17 |                              | Place:   Chadbourne & Parke LLP
   |                              |
18 |                              | Trial Date:
   |------------------------------|
19 | AND RELATED CROSS ACTION.     |

20

21          Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure,

22 Broadcom Corporation ("Broadcom") presents its objections to the subpoena *duces tecum*

23 and to the Document Requests therein (collectively, the "subpoena") as follows:

24                    **GENERAL OBJECTIONS**

25          The following general objections and statements apply to each of the

26 particular Document Requests propounded by Plaintiffs and are hereby incorporated into

27 the response to each specific Document Request. The fact that a specific response may

28

EX.C, pg. 41

1   mention one or more of the general objections does not mean that the other general

2   objections do not apply to that Document Request.

3          1.     Broadcom objects to the time and location of the production set forth

4   in the subpoena. The subpoena as drafted is unduly burdensome, oppressive, and

5   harassing. The subpoena's attempt to require Broadcom to conduct an extensive search

6   of its records in numerous facilities for broad categories of documents and produce them

7   by February 21, 2008 is neither feasible nor reasonable. The unfocused nature of the

8   subpoena reflects a failure to comply with the requirement in Rule 45, Federal Rules of

9   Civil Procedure, that "A party or attorney responsible for issuing and serving a subpoena

10   must take reasonable steps to avoid imposing undue burden or expense on a person

11   subject to the subpoena."

12          2.     Broadcom objects to the Definitions of Terms and General

13   Instructions set forth in the subpoena to the extent they purport to impose duties and

14   obligations inconsistent with and/or in excess of those imposed on a responding party

15   under the Federal Rules of Civil Procedure and/or the application Local Rules.

16   Broadcom notes that while the subpoena purports to define the terms "Defendants,"

17   "Plaintiffs," "your," "to identify," and "PSE," those terms are not used in any of the

18   Document Requests. Broadcom further notes that the subpoena does not provide a

19   definition for the term "AMIS," although that undefined term is used in six of the eleven

20   Document Requests.

21          3.     Broadcom objects to the subpoena to the extent it seeks information

22   and/or documents protected by the attorney-client privilege, the work-product doctrine, or

23   any other applicable privilege, doctrine or privacy right afforded to Broadcom or its

24   employees by federal, state, or local law or regulation. To the extent Broadcom

25   inadvertently discloses any information protected by the attorney-client privilege, the

26   work-product doctrine, or any other privilege or protection, such production is not

27   intended to and shall not operate as a waiver of any applicable privilege with respect to

28   that information or document, or any other information or documents. In the case of any

*EX.C, pg. 42*

1    such inadvertent production, Broadcom reserves the right to demand that Plaintiffs and

2    any other recipient return any such document and all copies thereof.  Insofar as the

3    disclosure of any information or document by Broadcom in response to a Document

4    Request may be deemed to be a waiver of any privilege or right, such waiver shall be

5    deemed to be a limited waiver with respect to that particular responsive information or

6    document.

7         4.      Broadcom objects to the subpoena to the extent it attempts or

8    purports to require disclosure of information and/or documents containing proprietary,

9    confidential, and/or private information, and declines to provide any such information

10   and/or documents that could subject Broadcom to competitive disadvantage or business

11   injury or violate confidentiality agreements or the privacy interests of third parties.

12   Broadcom reserves the right to withhold production of documents that may be subject to

13   confidentiality agreements with third parties unless and until Broadcom is authorized by

14   those third parties to produce such documents, as necessary.

15        5.      Broadcom objects to the subpoena to the extent it is vague,

16   ambiguous, and/or fails to describe the documents requested with reasonable

17   particularity.

18        6.      To the extent that Broadcom objects to a Document Request as

19   vague and ambiguous such that Broadcom is required to speculate on the scope of the

20   Request in the context of this action, Broadcom may nonetheless respond to such

21   Request, giving it what Broadcom believes to be a reasonable interpretation or

22   construction.  Broadcom, however, shall not be deemed bound by any inconsistent

23   interpretation applied by Plaintiffs.  Further, Broadcom's determination or failure to

24   determine that information or documents may or may not be responsive to a specific

25   Request shall not be deemed in any manner an admission by Broadcom, and Broadcom

26   shall not be deemed bound by any inconsistent interpretation applied by Plaintiffs.  To

27   the extent that Plaintiffs assert a different interpretation, Broadcom reserves its rights to

28   further object to the Request on additional grounds to that interpretation.

EX. C, pg. 43

1        7.    Broadcom objects to the subpoena to the extent it is overbroad,

2  unduly burdensome, oppressive and/or seeks information or documents that are neither

3  relevant to the parties' claims or defenses in this litigation nor reasonably calculated to

4  lead to the discovery of admissible evidence.

5        8.    Broadcom objects to the subpoena to the extent it calls for the

6  production of documents or information that is equally available from a party to the

7  litigation, such as AMI Semiconductor, Inc. or AMI Semiconductor Belgium BVBA, as

8  such production is unwarranted and imposes an undue burden and expense upon

9  Broadcom.

10        9.    Broadcom objects to the subpoena to the extent it calls for the

11  production of documents or information without any limitation as to the date of the

12  documents or information.

13        10.    Broadcom objects to the subpoena to the extent it seeks information

14  beyond what is available from a reasonable search of Broadcom's files likely to contain

15  relevant or responsive documents.

16        11.    Broadcom objects to the subpoena to the extent it seeks

17  electronically stored information from sources not reasonably accessible because of

18  undue burden or cost.

19           **DOCUMENT REQUESTS AND RESPONSES**

20        Subject to the General Objections set forth above, which are incorporated

21  by reference into Broadcom Corporation's response to each Document Request below,

22  Broadcom Corporation responds to Plaintiffs' Document Requests as follows:

23  **DOCUMENT REQUEST NO. 1:**

24        All documents in existence since January 1, 2004 sufficient to evidence

25  all/any document destruction and/or retention policies of Broadcom and/or document

26  destruction and/or retention policies of any facility(ies) used and/or occupied by

27  Broadcom, including documents in electronic form.

28

*EX.C, pg. 44*

1  **RESPONSE TO DOCUMENT REQUEST NO. 1:**

2      Broadcom incorporates the General Objections as though set forth in their

3  entirety herein.  Broadcom further objects that, as an entity that is not a party to the

4  litigation, its document destruction and/or retention policies are unrelated to the subject

5  matter of this litigation.  Accordingly, this Document Request seeks information or

6  documents that are neither relevant to the parties' claims or defenses in this litigation nor

7  reasonably calculated to lead to the discovery of admissible evidence.  Broadcom further

8  objects that this Document Request is vague and ambiguous as to the phrases "[a]ll

9  documents . . . sufficient to evidence all/any document destruction and/or retention

10  policies of Broadcom" and "any facility(ies) used and/or occupied by Broadcom," and on

11  the ground that it fails to specify with reasonable particularity the documents or category

12  of documents sought.

13  **DOCUMENT REQUEST NO. 2:**

14      All documents in existence since January 1, 2004 sufficient to evidence any

15  communications between Broadcom and any current and/or former employee of

16  PowerDsine, Inc., PowerDsine, Ltd. and/or Microsemi Corporation concerning

17  employment and/or the making, using, selling, offering for sale and/or planned offer for

18  sale of any Power-over-Ethernet integrated circuit product.

19  **RESPONSE TO DOCUMENT REQUEST NO. 2:**

20      Broadcom incorporates the General Objections as though set forth in their

21  entirety herein.  Broadcom further objects that this Document Request is vague and

22  ambiguous as to the phrase "[a]ll documents . . . sufficient to evidence any

23  communications," and on the ground that it fails to specify with reasonable particularity

24  the documents or category of documents sought.  Broadcom further objects that this

25  Request is overbroad, unduly burdensome, oppressive and/or seeks information or

26  documents that are neither relevant to the parties' claims or defenses in this litigation nor

27  reasonably calculated to lead to the discovery of admissible evidence.

28

EX. C, pg. 45

1  **DOCUMENT REQUEST NO. 3:**

2          All documents concerning any communications between Broadcom and

3  AMIS concerning PowerDsine, any products designed and/or sold by PowerDsine and/or

4  Power-over-Ethernet products.

5  **RESPONSE TO DOCUMENT REQUEST NO. 3:**

6          Broadcom incorporates the General Objections as though set forth in their

7  entirety herein.  Broadcom further objects that the term "AMIS" is not defined.

8  Broadcom further objects to the Request on the ground that it seeks documents from a

9  non-party that should be equally available from a party to the litigation.  Broadcom notes

10  that, as written, this Request would cover "[a]ll documents concerning any

11  communications between Broadcom and AMIS concerning . . . Power-over-Ethernet

12  products."  Broadcom objects that this Request is overbroad, unduly burdensome,

13  oppressive and/or seeks information or documents that are neither relevant to the parties'

14  claims or defenses in this litigation nor reasonably calculated to lead to the discovery of

15  admissible evidence.

16  **DOCUMENT REQUEST NO. 4:**

17          All documents concerning any communications between Broadcom and

18  AMIS concerning PowerDsine and/or any litigation and/or dispute between AMIS and

19  PowerDsine.

20  **RESPONSE TO DOCUMENT REQUEST NO. 4:**

21          Broadcom incorporates the General Objections as though set forth in their

22  entirety herein.  Broadcom further objects that the term "AMIS" is not defined.

23  Broadcom further objects to the Request on the ground that it seeks documents from a

24  non-party that should be equally available from a party to the litigation.  Broadcom

25  further objects that this Request is overbroad, unduly burdensome, oppressive and/or

26  seeks information or documents that are neither relevant to the parties' claims or defenses

27  in this litigation nor reasonably calculated to lead to the discovery of admissible

28  evidence.

*EX.C, Pg. 46*

1  **DOCUMENT REQUEST NO. 5:**

2        All documents concerning any communications between Broadcom and

3  Shimon Elkayam concerning the making, using, designing, selling, offering for sale

4  and/or planned offer for sale of any Power-over-Ethernet integrated circuit product.

5  **RESPONSE TO DOCUMENT REQUEST NO. 5:**

6        Broadcom incorporates the General Objections as though set forth in their

7  entirety herein. Mr. Elkayam is a Broadcom employee. Broadcom notes that, as written,

8  this Request would cover "[a]ll documents concerning any communications" between

9  Broadcom and its own employee "concerning the making, using, designing, selling,

10  offering for sale and/or planned offer for sale of any Power-over-Ethernet integrated

11  circuit product." Broadcom objects that this Request is overbroad, unduly burdensome,

12  oppressive and/or seeks information or documents that are neither relevant to the parties'

13  claims or defenses in this litigation nor reasonably calculated to lead to the discovery of

14  admissible evidence.

15  **DOCUMENT REQUEST NO. 6:**

16        All documents, including but not limited to email documents, sent by

17  Shimon Elkayam to AMIS.

18  **RESPONSE TO DOCUMENT REQUEST NO. 6:**

19        Broadcom incorporates the General Objections as though set forth in their

20  entirety herein. Broadcom further objects that the term "AMIS" is not defined.

21  Broadcom further objects to the Request on the ground that it seeks documents from a

22  non-party that should be equally available from a party to the litigation. Broadcom

23  further objects that this Request is overbroad, unduly burdensome, oppressive and/or

24  seeks information or documents that are neither relevant to the parties' claims or defenses

25  in this litigation nor reasonably calculated to lead to the discovery of admissible

26  evidence.

27

28

*EX. C, pg. 47*

1 | **DOCUMENT REQUEST NO. 7:**

2 |      All documents concerning any communications between Shimon Elkayam

3 | and Broadcom concerning the recruitment, hiring and/or employment process of Shimon

4 | Elkayam, including e-mails sent and received, any current and/or prior agreement(s)

5 | between Mr. Elkayam and Broadcom and all documents submitted by Broadcom and/or

6 | Mr. Elkayam concerning the application for and/or obtaining a visa for Mr. Elkayam to

7 | work in the United States.

8 | **RESPONSE TO DOCUMENT REQUEST NO. 7:**

9 |      Broadcom incorporates the General Objections as though set forth in their

10 | entirety herein. Broadcom further objects that this Request is overbroad, unduly

11 | burdensome, oppressive and/or seeks information or documents that are neither relevant

12 | to the parties' claims or defenses in this litigation nor reasonably calculated to lead to the

13 | discovery of admissible evidence. Broadcom further objects that this Request is vague

14 | and ambiguous as to the phrase "employment process."

15 | **DOCUMENT REQUEST NO. 8:**

16 |      All documents concerning any communications between any Broadcom

17 | engineers and AMIS concerning the making, designing, using, selling, offering for sale or

18 | plan to offer for sale of any Power-over-Ethernet integrated circuit product.

19 | **RESPONSE TO DOCUMENT REQUEST NO. 8:**

20 |      Broadcom incorporates the General Objections as though set forth in their

21 | entirety herein. Broadcom further objects that the term "AMIS" is not defined.

22 | Broadcom further objects to the Request on the ground that it seeks documents from a

23 | non-party that should be equally available from a party to the litigation. Broadcom

24. | further objects that this Request is overbroad, unduly burdensome, oppressive and/or

25 | seeks information or documents that are neither relevant to the parties' claims or defenses

26 | in this litigation nor reasonably calculated to lead to the discovery of admissible

27 | evidence.

28 |

EX. C, pg. 48

1  **DOCUMENT REQUEST NO. 9:**

2        All documents concerning any communications between Broadcom and

3  Shimon Elkayam concerning PowerDsine and/or any products designed and/or sold by

4  PowerDsine or the design of Power-over-Ethernet products.

5  **RESPONSE TO DOCUMENT REQUEST NO. 9:**

6        Broadcom incorporates the General Objections as though set forth in their

7  entirety herein.  Mr. Elkayam is a Broadcom employee.  Broadcom notes that, as written,

8  this Request would cover "[a]ll documents concerning any communications" between

9  Broadcom and its own employee "concerning . . . the design of Power-over-Ethernet

10  integrated circuit products."  Broadcom objects that this Request is overbroad, unduly

11  burdensome, oppressive and/or seeks information or documents that are neither relevant

12  to the parties' claims or defenses in this litigation nor reasonably calculated to lead to the

13  discovery of admissible evidence.

14  **DOCUMENT REQUEST NO. 10:**

15        All documents concerning any communications between Broadcom and

16  Sharon Dagan, a former employee of AMIS, concerning the making, using, selling,

17  offering for sale and/or planned offer for sale of any Power-over-Ethernet integrated

18  circuit product.

19  **RESPONSE TO DOCUMENT REQUEST NO. 10:**

20        Broadcom incorporates the General Objections as though set forth in their

21  entirety herein.  Broadcom further objects that the term "AMIS" is not defined.

22  Broadcom further objects to the Request on the ground that it seeks documents from a

23  non-party that should be equally available from a party to the litigation.  Broadcom

24  further objects that this Request is overbroad, unduly burdensome, oppressive and/or

25  seeks information or documents that are neither relevant to the parties' claims or defenses

26  in this litigation nor reasonably calculated to lead to the discovery of admissible

27  evidence.

28

EX. C/p9·49

1    **DOCUMENT REQUEST NO. 11:**

2           All documents provided by AMIS to Broadcom concerning any litigation,

3    dispute and/or potential dispute between AMIS and PowerDsine.

4    **RESPONSE TO DOCUMENT REQUEST NO. 11:**

5           Broadcom incorporates the General Objections as though set forth in their

6    entirety herein.  Broadcom further objects that the term "AMIS" is not defined.

7    Broadcom further objects to the Request on the ground that it seeks documents from a

8    non-party that should be equally available from a party to the litigation.  Broadcom

9    further objects that this Request is overbroad, unduly burdensome, oppressive and/or

10   seeks documents that are neither relevant to the parties' claims or defenses in this

11   litigation nor reasonably calculated to lead to the discovery of admissible evidence.

12   Dated: February 16, 2008              Respectfully submitted,

13                           LATHAM & WATKINS LLP
14                           Dean G. Dunlavey

15

16                       By _____

17                           Dean G. Dunlavey
                             Attorneys for Non-Party
                             BROADCOM CORPORATION

18

19

20

21

22

23

24

25

26

27

28

*EX. C, pg. 50*

1

### PROOF OF SERVICE

2

    I am employed in the County of Orange, State of California.  I am over the age of 18

3

years and not a party to this action.  My business address is Latham & Watkins LLP, 650 Town Center Drive, 20th Floor, Costa Mesa, CA 92626-1925.

4

    On **February 19, 2008**, I served the following document described as:

5

**BROADCOM CORPORATION'S OBJECTIONS AND RESPONSES TO**

6

**PLAINTIFFS POWERDSINE, INC. AND POWERDSINE, LTD.'S SUBPOENA FOR PRODUCTION OR INSPECTION AND COPYING**

7

by serving a true copy of the above-described document in the following manner:

8

### BY U.S. MAIL

9

    I am familiar with the office practice of Latham & Watkins LLP for collecting and

10

processing documents for mailing with the United States Postal Service.  Under that practice, documents are deposited with the Latham & Watkins LLP personnel responsible for depositing documents with the

11

United States Postal Service; such documents are delivered to the United States Postal Service on that same day in the ordinary course of business, with postage thereon fully prepaid.  I deposited in Latham &

12

Watkins LLP' interoffice mail a sealed envelope or package containing the above-described document and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for

13

collecting and processing documents for mailing with the United States Postal Service:

14

Dennis Hopkins, Esq.                            Chadbourne & Parke LLP
Chadbourne & Parke LLP                  350 South Grand Avenue, Suite 3300

15

30 Rockefeller Plaza                            Los Angeles, CA 90071
New York, NY 10112

16

17

    I declare that I am employed in the office of a member of the Bar of, or permitted to

18

practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

19

    Executed on **February 19, 2008**, at Costa Mesa, California.

20

*Deborah Rickert*

21

Deborah Rickert

22

23

24

25

26

27

28

*EX.C, p9·51*

# Exhibit D

355 South Grand Avenue
Los Angeles, California 90071-1560
Tel: +1.213.485.1234 Fax: +1.213.891.8763
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Dubai | Orange County |
| Frankfurt | Paris |
| Hamburg | Rome |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

July 31, 2008

Paul Tanck, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

> Re:   *PowerDsine, Inc. et. al. v. AMI Semiconductor, Inc. et. al.,*
>       USDC, Southern District of New York No. 07 CV 6014 (SAS)(FM)

Dear Mr. Tanck:

I am responding to your July 30, 2008 letter regarding the document subpoena served on third-party Broadcom Corporation in February. Since Broadcom's objections to the subpoena were served on February 19, 2008, over five months ago, we find it surprising that PowerDsine is now trying to raise an issue about the adequacy of Broadcom's response. In any event, at present, we are available for the requested conference of counsel pursuant to Local Rule 37-1 on August 6th or August 7th between 2:00 pm and 4:00 pm. Please let me know as soon as you can which of those dates and what time would work for you so that we can calendar the meeting.

Your letter confirms the need to narrow PowerDsine's subpoena in a manner to avoid imposing undue burden on Broadcom and tailoring the document requests to seek only materials that are relevant to claims or defenses in the lawsuit. In addition, under the circumstances, it is necessary to avoid requests for materials that would disclose trade secrets or other Broadcom confidential research, development or commercial information, particularly where you have not shown a need for such information, let alone a substantial need.

At present, you have offered to narrow PowerDsine's document subpoena to:

(1) Communications sent by or received from Shimon Elkayam ("Mr. Elkayam") concerning his involvement in the development of BCM5910x products;

(2) Documents concerning the recruitment and/or hiring of Mr. Elkayam by Broadcom (or any entity affiliated with Broadcom), including e-mails, any agreement(s) between Mr. Elkayam and Broadcom, and all documents submitted by Broadcom and/or Mr. Elkayam concerning the applying for and/or obtaining a visa to permit Mr. Elkayam to work in the United States; and

LA\1886047.2

*EX. D, pg. 53*

Paul Tanck, Esq.
July 31, 2008
Page 2

**LATHAM&WATKINS**LLP

(3) Communications sent or received from Mr. Elkayam concerning PowerDsine's Power-over-Ethernet products.

These requests, however, continue to be overbroad, unduly burdensome, vague and ambiguous, and continue to seek materials that are neither relevant to the claims or defenses in this litigation between PowerDsine and AMI Semiconductor nor reasonably calculated to lead to the discovery of admissible evidence, in addition to the other previously stated objections. We request that in advance of the conference you clarify the narrowed requests, and identify how the requested materials are relevant to the lawsuit. We further request a copy of the agreements at issue in the case alleged to be breached, a list of the features of Power-over-Ethernet chips that are alleged to have been provided by PowerDsine to AMI Semiconductor pursuant to the agreement(s) and subsequently incorporated into Broadcom products, and an explanation of how internal Broadcom communications, development of Broadcom chips, and/or Mr. Elkayam's recruitment, hiring or work visa are relevant to the lawsuit.

As you know, late last Friday afternoon we received by e-mail, and on July 28 we received by Federal Express, PowerDsine's Rule 30(b)(6) deposition subpoena for Broadcom. The subpoena lists nineteen very broad topics and raises similar issues of, among other things, undue burden, lack of relevance, and an attempt to improperly seek disclosure of trade secrets or other confidential research, development or commercial information that is not relevant to the lawsuit between PowerDsine and AMI Semiconductor. The subpoena also calls for the production of documents at the deposition. The document descriptions overlap with the categories of documents identified in PowerDsine's February 2008 document subpoena and are objectionable for the same reasons. Broadcom anticipates serving its objections to the deposition subpoena shortly.

We are in the process of conferring with your office regarding your July 25, 2008 deposition subpoena for Mr. Elkayam, a current Broadcom employee. We have raised our concerns regarding the scope of that deposition, and in particular that PowerDsine may be seeking to expand the scope of Mr. Elkayam's deposition beyond matters reasonably relevant to the PowerDsine/AMI Semiconductor lawsuit. We have requested that an agreement regarding the scope of this deposition be reached in advance of the deposition and are awaiting PowerDsine's response.

Please note, as we discussed with Dennis Hopkins, Peter Bucci and Kimberly Giuliano of your office, both Dean and I will be out of the office between August 13th through September 1st on pre-planned vacations.

Very truly yours,

Amos E. Hartston
of LATHAM & WATKINS LLP

LA\1886047.2

*EX. D, pg. 54*

Paul Tanck, Esq.
July 31, 2008
Page 3

# LATHAM&WATKINSᴸᴸᴾ

cc:     Joseph Mais, Esq.
        Walter Hanchuk, Esq.
        Dennis C. Hopkins, Esq.
        Peter Bucci, Esq.
        Kimberly A. Giuliano, Esq.
        Michael A. Oblon, Esq.
        Dean G. Dunlavey, Esq.

LA\1886047.2

EX. D, pg. 55

# Exhibit E

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100  fax (212) 541-5369

# CHADBOURNE
## & PARKE LLP

**Paul Tanck**
**direct tel** 212-408-1116
PTanck@chadbourne.com

August 6, 2008

***Via Email***
Amos Hartston, Esq.
Latham and Watkins, LLP
650 Town Center Drive
20th Floor
Costa Mesa CA 92626-192

      Re:  *PowerDsine, Inc. et al. v. AMI Semiconductor, Inc., et al.*
          No. 07cv6014 (S.D.N.Y.) (SAS)(FM)

Dear Mr. Hartston:

      Thank you for your prompt response to my July 30, 2008 letter to Mr. Dunlavey.  As I had stated in my email to you on Monday August 4, we are available for the telephone conference pursuant to Local Rule 37-1 on August 7th at 2:00 p.m. PDT.  On the call we are prepared to discuss Broadcom Corporation's ("Broadcom") production of documents pursuant to the subpoena served on February 6, 2008 and narrowed by my letter July 30, 2008 letter.

      In your July 31 letter you requested, in advance of the conference, that PowerDsine:

    1.  clarify the narrowed document requests;

    2.  identify how the requested materials are relevant;

    3.  provide a copy of the agreements at issue in the case;

    4.  provide a list of the features of Power-over-Ethernet chips that are alleged to have been provided by PowerDsine to AMI Semiconductor ("AMIS") pursuant to the agreement(s) and subsequently incorporated into Broadcom products; and

    5.  explain how internal Broadcom communications, development of Broadcom chips, and/or Mr. Elkayam's recruitment, hiring or work visa are relevant to the lawsuit.

I will address each of your requests in turn.

      First, the narrowed document requests to Broadcom are as follows:

*EX.E, p9.57*

# CHADBOURNE
## & PARKE LLP

Amos Hartston, Esq.
Latham and Watkins, LLP                      -2-                      August 6, 2008

    1) Communications sent by or received from Shimon Elkayam ("Mr. Elkayam") concerning his involvement in the development of BCM5910x products. [*See* Subpoena Document Request No. 5]

    2) Documents concerning the recruitment and/or hiring of Mr. Elkayam by Broadcom (or any entity affiliated with Broadcom), including e-mails, any agreement(s) between Shimon Elkayam and Broadcom, and all documents submitted by Broadcom and/or Mr. Elkayam concerning the applying for and/or obtaining a visa to permit Mr. Elkayam to work in the United States. [*See* Subpoena Document Request No. 7]

    3) Communications sent by or received from Mr. Elkayam concerning PowerDsine's Power-over-Ethernet products. [*See* Subpoena Document Request No. 9]

I am not sure what part of these requests you would like me to clarify. I will do my best to clarify the topics during our call.

    Second, the requested materials are relevant to understanding AMIS's assertions that the features of the BCM5910x products were jointly developed between AMIS and Broadcom without the use of PowerDsine proprietary information. Mr. Elkayam, PowerDsine's Power-over-Ethernet products architect from 2000-2005, was hired by Broadcom and assisted in the development of the BCM5910x products. The documents we seek with regards to Mr. Elkayam and the BCM5910x are unavailable from AMIS and are necessary in proving or disproving AMIS's defense in this lawsuit. Further, the documentation regarding Mr. Elkayam's employment will provide information necessary to understand when Mr. Elkayam's involvement began in the development of the BCM5910x products. A copy of the amended complaint is attached for your reference which explains Mr. Elkayam's relationship to the lawsuit in further detail.

    Third, I will request that AMIS permit PowerDsine to send you a copy of the confidential agreements at issue in this lawsuit. A copy of the protective order in this case is attached to this letter. Please return a signed copy of the undertaking found at the end of the protective order. Once this is received along with AMIS's consent, I will send you a copy of the agreements.

    Fourth, once we receive the signed copy of the undertaking to the protective order we can discuss the features of the BCM5910x products at issue in the lawsuit.

    Fifth, please see my response to your second request.

*EX .F, pg. 58*

# CHADBOURNE
## & PARKE LLP

Amos Hartston, Esq.
Latham and Watkins, LLP                    -3-                    August 6, 2008

In advance of our August 7 conference, we request that you investigate the amount of time it would take to retrieve and produce the requested documents.

Following our discussion regarding document production pursuant to the February 2008 subpoena and narrowed by our July 30 letter, we will be prepared to discuss the remaining discovery issues between PowerDsine and Broadcom, which include:

- Scheduling a date for Shimon Elkayam's deposition;

- Scheduling a date for Broadcom's 30(b)(6) deposition;

- Production of documents pursuant to Broadcom's and Mr. Elkayam's deposition notices;

- Scope of questioning with regards to the above depositions; and

- any other discovery issues.

I really appreciate your cooperation and hope that our call on Thursday will ensure efficient and productive depositions of Broadcom and its employees along with the production of the documents that are needed in this lawsuit.

Very truly yours,

Paul Tanck

Enclosures

cc:  Dean G. Dunlavey, Esq.
Joseph Mais, Esq.
Michael Oblon, Esq.
Walter Hanchuk, Esq.
Dennis Hopkins, Esq.
Peter Bucci, Esq.
Kimberly Giuliano, Esq.

*EX.E, pg.59*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



POWERDSINE, INC. and POWERDSINE, LTD.,

Plaintiffs,

-against-

AMI SEMICONDUCTOR, INC. and AMI
SEMICONDUCTOR BELGIUM BVBA,

Defendants.

Civil Action No. 07Civ. 6014(SAS)

**FIRST AMENDED
COMPLAINT**

RECEIVED

JUL 2 0 2007

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd. (collectively "PowerDsine" or

"Plaintiffs"), by and through their undersigned attorneys, hereby complain of Defendants AMI

Semiconductor, Inc. and AMI Semiconductor Belgium BVBA (collectively "AMIS") as follows:

### THE PARTIES

1.      PowerDsine, Inc., a wholly owned U.S. subsidiary of PowerDsine, Ltd., is

a corporation organized under the laws of the State of New York with its principal place of

business in Melville, New York.  PowerDsine, Inc. assists its parent, PowerDsine, Ltd., in the

design of integrated circuits, modules and systems that enable the implementation of Power-

over-Ethernet ("PoE") in local area networks ("LANs") and sells and supplies such integrated

circuits, modules and systems.

2.      PowerDsine, Ltd. is a corporation organized under the laws of Israel, with

its principal place of business at 1 Hanagar Street, Hod Hasharon, Israel.  PowerDsine, Ltd.

designs and supplies integrated circuits, modules and systems that enable the implementation of

PoE in LANs and sells some of its products in the U.S. and other countries through its U.S.

subsidiary, PowerDsine, Inc.

*EX. E, pg. 60*

3.    Upon information and belief, Defendant AMI Semiconductor, Inc. is a corporation organized under the laws of Delaware, having its principal place of business located at 2300 Buckskin Road, Pocatello, Idaho.

4.    Upon information and belief, Defendant AMI Semiconductor Belgium BVBA is a corporation organized under the laws of Belgium, having its principal place of business located at Westerring 15, B-9700 Oudenaarde, Belgium.

## JURISDICTION AND VENUE

5.    Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the matter in controversy exceeds the sum of $75,000.00, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

6.    Venue is proper in this District pursuant to agreement by and amongst the parties.

## FACTUAL BACKGROUND

### *PowerDsine is the pioneer of Power-over-Ethernet Technology*

7.    Plaintiffs market and sell industry leading components that provide, among other things, Power-over-Ethernet networks. Plaintiffs' customers regularly incorporate PowerDsine components into Ethernet network products sold on the open market. These components enable a system that incorporates these products to supply both data and electrical operating power over the same Ethernet network cable to a device that is connected to the LAN network. Accordingly, networking equipment that uses Plaintiffs' products are able to provide operating electrical power to end-devices, such as phones, cameras and wireless access points so

*EX. E, pg. 61*

that there is no need to connect such end-devices to traditional electrical outlets. Plaintiff PowerDsine, Ltd., has been in business since 1994.

8.     PowerDsine, Ltd. was the pioneer of PoE technology and was the driving force that has led the data and voice networking industries to embrace PoE technology so that PoE will become a part of almost all Ethernet networking switching equipment ("Power Sourcing Equipment").

9.     PowerDsine derives more than ninety percent of its revenue from the sale of PoE products.

10.     PowerDsine has been conducting research and development activities with respect to PoE technology for almost ten years.

11.     PowerDsine has spent significant sums in excess of $50 million in business activities, including research and development, involving PoE.

12.     The principal driving force behind PowerDsine's initial public offering in June 2004, where the company raised over $60 million, was centered around PoE technology.

13.     In order to maintain its competitive edge, PowerDsine maintains much of its proprietary information confidentially. Due to its innovative, confidential proprietary information, PowerDsine has become the technological leader in the Power-over-Ethernet Market.

14.     By no later than March, 2004, PowerDsine had invented and developed an integrated circuit that would enable Power Sourcing Equipment to, *inter alia*, deliver power to end-devices over Ethernet cables (hereafter "Product") and, in connection therewith, PowerDsine possessed the specifications, circuitry and other information and files relating to the design,

3

EX. E, pg. 62

functionality, testing requirements and other information relating to the Product (hereafter "Product Information").

*Shimon Elkayam, A former PowerDsine Employee, Gained all of His PoE Technology Experience at PowerDsine and in Exchange Agreed not to Compete with PowerDsine*

15.   Mr. Elkayam was employed by PowerDsine, Ltd. between approximately December 2000 and December 2005.

16.   Prior to his employment at PowerDsine, Ltd., Mr. Elkayam did not have any professional or other experience with PoE technology.

17.   Mr. Elkayam was employed at PowerDsine, Ltd. as a Research & Development Engineer specializing in development of PoE technology.

18.   As a PowerDsine, Ltd. employee, Mr. Elkayam became a Senior Systems Designer and Architect of PoE integrated circuits, modules and systems.

19.   While employed by PowerDsine, Ltd., Mr. Elkayam gained PoE-related experience and benefited from the research and development activities conducted by PowerDsine prior to the time that he joined PowerDsine.

20.   While employed by PowerDsine, Ltd., Mr. Elkayam also benefited and gained PoE-related experience from research and development activities conducted by PowerDsine during the time that he was employed with the PowerDsine.

21.   As part of his employment agreement with PowerDsine, Ltd., Mr. Elkayam was privy to, received and had in his possession confidential and proprietary information of PowerDsine and about PowerDsine, including extensive information about products, and technology developed by PowerDsine as well as PowerDsine trade secrets.

22.   Mr. Elkayam obtained the foregoing confidential information, and other confidential information and trade secrets of PowerDsine, as a direct result of his employment

4

*EX. E, pg. 63*

relationship with PowerDsine, Ltd. and because, prior to the commencement of his employment with PowerDsine, Ltd., he executed a confidentiality agreement and undertaking not to disclose any and all confidential information of PowerDsine both during his employment relationship and after termination thereof.

        23.    In order to induce PowerDsine to enable Mr. Elkayam to work at PowerDsine and learn PoE technology and obtain confidential information and trade secrets of PowerDsine, Mr. Elkayam also agreed that for a period of twenty-four months after the termination of his employment at PowerDsine, Ltd., he would not compete with PowerDsine or work for or provide any services to any company that competes with PowerDsine or develops, markets or sells products that compete with PowerDsine's products.

*AMIS, the Late-Comer to PoE Technology (A) Breached a Non-competition Agreement with PowerDsine, (B) Misappropriated Confidential Information of PowerDsine, and (C) Induced PowerDsine Employees to Breach Their Employment and Non-competition Agreements with PowerDsine*

        24.    In or about March, 2004, AMIS was in the business of manufacturing and assembling products in the electronic industry, and more specifically, customer-specific mixed-signal semiconductor products.

        25.    Based on its public filings, AMIS operates in two segments, Integrated Mixed Signal Products and Structured Digital Products. The Integrated Mixed Signal Products segment uses AMIS's wafer fabrication process technologies and the engineers of the Integrated Mixed Signal Product segment work hand-in-hand with the engineers in AMIS's internal fabrication facilities.

        26.    AMIS's internal fabrication facilities support mixed signal analog technologies such as the ones involving PoE products.

*EX. E, pg. 64*

27.     Upon information and belief, prior to at least March, 2004, AMIS did not possess the technical information, knowledge or experience required to design or manufacture PoE products or PoE semiconductor products.

28.     In or about March, 2004, PowerDsine and AMIS sought to explore and evaluate the possibility of establishing a business relationship pursuant to which PowerDsine would engage AMIS as a design parter/subcontractor to manufacture PoE semiconductor products exclusively for PowerDsine based on PowerDsine's proprietary and confidential PoE technology, know-how, trade secrets and confidential information.

29.     In order to establish this business relationship, the parties realized that it would be desirable for PowerDsine and AMIS to disclose confidential and proprietary information to each other.

30.     In or about March, 2004, PowerDsine and AMIS, in order to induce each other to disclose confidential and proprietary information, undertook certain obligations of confidentiality and non-disclosure.

31.     PowerDsine and AMIS acknowledged that the confidential information to be disclosed to each other would constitute a trade secret of, and was proprietary to, its discloser and could be used only for the purposes of manufacturing products solely for PowerDsine.

32.     In or about August, 2005, PowerDsine and AMIS realized that in order to further proceed toward investigating the possibility of establishing a business relationship, PowerDsine would have to provide additional, extremely sensitive confidential information to AMIS.

33.     PowerDsine decided that because of the sensitive nature of such confidential information, it would disclose such information only if AMIS would agree not to

EX. E, pg. 65

compete with PowerDsine in the PoE field relating to products that are integrated into network switching equipment.

34.    In order to receive such information, AMIS agreed not to compete with PowerDsine in the foregoing segment of the PoE market based on confidential information provided by PowerDsine.

35.    As a result of AMIS's agreement not to compete, PowerDsine disclosed to AMIS PowerDsine's confidential and proprietary information, including the unique design specifications and features of PoE integrated circuits designed and developed by PowerDsine, as well as valuable confidential information about PoE technology which were developed by PowerDsine over years of research and development efforts.

36.    Mr. Elkayam was the principal employee of PowerDsine, Ltd. who was in charge of the AMIS relationship and disclosure and provided to AMIS, pursuant to the agreements outlined above, the forgoing confidential and proprietary information of PowerDsine.

37.    AMIS received and accepted this confidential PowerDsine information and even incorporated it into design documents bearing AMIS's insignia.

38.    Upon information and belief, at approximately the same time it received PowerDsine's confidential and proprietary information, AMIS established a business relationship with Broadcom Corporation.

39.    Broadcom Corporation ("Broadcom"), having a place of business at 5300 California Avenue Irvine, California 92617, is a company engaged in the highly competitive business of marketing and selling components that are incorporated into, among other things, data and voice networking equipment.

7

EX. E, P9. 66

40.   Upon information and belief, during the time Mr. Elkayam was working with AMIS on behalf of PowerDsine, or shortly thereafter, Mr. Elkayam agreed to work for Broadcom Corporation, directly or through one of its European subsidiaries.

41.   Mr. Elkayam approached his managers at PowerDsine and informed them that his wife no longer desires to live in Israel and would like to move close to her family in Toulouse, France.

42.   Mr. Elkayam left PowerDsine in or about December, 2005, and informed PowerDsine that he was indeed moving to Toulouse, France and would not work in any way on PoE technology in order to honor the non-competition clause of his Agreement with PowerDsine.

43.   Upon information and belief, within weeks after departing from PowerDsine, Mr. Elkayam began his employment at Broadcom, directly or through one of its European subsidiaries.

44.   Upon information and belief, within months after working with AMIS on PoE as a PowerDsine employee pursuant to an appropriate confidentiality and non-competition agreement between AMIS and PowerDsine, Mr. Elkayam was working with AMIS on PoE as a Broadcom employee.

45.   By continuing to work with Mr. Elkayam on PoE, AMIS intentionally and knowingly circumvented the relevant agreements relating to confidentiality and non-competition that it had entered into with PowerDsine.

46.   Mr. Elkayam concealed from PowerDsine the fact that he was working for Broadcom and/or was providing PowerDsine's confidential and proprietary information to AMIS.

8

EX. E, pg. 67

47.     Late in 2006, when PowerDsine discovered that Mr Elkayam was employed by Broadcom, Mr. Elkayam continued to falsely assert to PowerDsine personnel who had occasion to run into him, that he does not work on PoE technology or products.

48.     Upon information and belief, Mr. Elkayam was involved with the design and development of PoE products by AMIS.

49.     Upon information and belief, Mr. Elkayam continues until the present time to provide AMIS with confidential and proprietary information of PowerDsine and continues to work with AMIS in violation of his non-competition agreement with PowerDsine.

50.     Upon information and belief, Mr. Elkayam continues until the present time to assist and consult with AMIS in developing PoE products in breach of his agreements with PowerDsine.

51.     Upon information and belief, AMIS knew or should have known that Mr. Elkayam was providing information to AMIS in violation of his agreements with PowerDsine.

52.     On or before December, 2006 AMIS recruited Sharon Dagan ("Mr. Dagan"), another employee of PowerDsine, Ltd. who was involved with PoE technology and with the definition of PowerDsine's next-generation PoE products.

53.     Prior to joining PowerDsine, Mr. Dagan did not have any PoE experience.

54.     Mr. Dagan gained PoE-related experience at PowerDsine and benefited from the research and development and product marketing and product definition activities conducted by PowerDsine prior to the time that he joined PowerDsine.

55.     Mr. Dagan also benefited and gained PoE-related experience from research and development activities as well as product marketing and definition activities conducted by PowerDsine after the time he joined PowerDsine.

*EX.E, p9.68*

56.     As part of his employment agreement with PowerDsine, Ltd., Mr. Dagan was privy to, received and had in his possession confidential and proprietary information of PowerDsine and about PowerDsine, including extensive information about products, and technology developed by PowerDsine as well as PowerDsine trade secrets.

57.     Mr. Dagan obtained the foregoing confidential information, other confidential information and trade secrets of PowerDsine as a direct result of his employment relationship with PowerDsine and because, prior to the commencement of his employment with PowerDsine, he induced PowerDsine to disclose such information by executing a confidentiality agreement and undertaking not to disclose any confidential information of PowerDsine, both during his employment relationship and after termination thereof.

58.     In order to further induce PowerDsine to enable Mr. Dagan to work at PowerDsine, Mr. Dagan also agreed that for a period of 24 months after the termination of his employment at PowerDsine, he would not compete with PowerDsine or work for, or provide any services to, any company that competes with PowerDsine or develops, markets or sells any products that compete with PowerDsine's products.

59.     Upon information and belief, AMIS knew about the foregoing agreements and covenants executed by Mr. Dagan.

60.     Upon information and belief, AMIS recruited Mr. Dagan so that it would be able to gain an insight into confidential PowerDsine information and technology, including PowerDsine's product road-map and marketing plans.

61.     Upon information and belief, Mr. Dagan was hired by AMIS shortly after he left PowerDsine.

10

EX. E, pg. 69

62.     Upon information and belief, AMIS needed such information in order to further its relationship with Broadcom.

63.     Upon information and belief, Broadcom has recently entered the business of selling Power-over-Ethernet components internationally, in direct competition with PowerDsine.

64.     Upon information and belief, AMIS manufactures PoE components for Broadcom, which Broadcom then sells and/or offers for sale as Broadcom products.

65.     Upon information and belief, AMIS designs and/or manufactures PoE products for Broadcom based on confidential and proprietary information that it received from PowerDsine, including information provided by Mr. Elkayam and Mr. Dagan after each of them left PowerDsine.

66.     Upon information and belief, certain Broadcom products, including but not limited to the BCM59101 Module, include certain unique design specifications and features that are based on information provided by PowerDsine to AMIS, directly and through Mr. Elkayam, both during his employment at PowerDsine, Ltd. and after he left such employment.

67.     Upon information and belief, AMIS, through its newly formed High Voltage Communications Group, designs and sells the PoE integrated circuit developed by AMIS.

68.     Upon information and belief, the High Voltage Communications Group of AMIS leverages significant resources and capabilities of AMIS from the entire organization in order to design, sell and manufacture its PoE integrated circuit products.

69.     Upon information and belief, AMIS has told its investors that it believes the PoE integrated circuit market is capable of generating yearly revenue of $80 million.

11

EX. E, pg. 70

70.    Upon information and belief, AMIS produces and designs most of the mixed-signal integrated circuits out of its design center and foundry in Belgium and draws from design centers and other resources from throughout the organization.

71.    PowerDsine personnel transferred confidential information and proprietary information and trade secrets to personnel working for the analog mixed signal design group which at the time was spread throughout design houses of AMIS located at several locations including, without limitation, facilities at Vilvoorde, Belgium, Oudenaarde, Belgium, Brno, Czech Republic, and Pocatello, Idaho.

## CLAIM ONE AGAINST AMIS:
### BREACH OF CONTRACT

72.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

73.    PowerDsine disclosed to AMIS valuable confidential and proprietary information, which took almost ten years for PowerDsine to develop.

74.    AMIS agreed not to use or disclose this information or to develop and market PoE products based on confidential and proprietary information received from PowerDsine.

75.    AMIS breached its agreement by violating an undertaking not to compete and by misappropriating PowerDsine's confidential information.

76.    As a result of AMIS's breach, PowerDsine has suffered and will continue to suffer damages.

12

EX. E, pg. 71

### CLAIM TWO AGAINST AMIS:
### TORTIOUS INTERFERENCE WITH
### CONTRACTUAL RELATIONSHIP WITH SHARON DAGAN

77.     Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

78.     Since the time of his employment with PowerDsine, Mr. Dagan has had a valid Confidentiality and Non-Competition Agreement with PowerDsine, Ltd.

79.     Upon information and belief, Defendant AMIS was fully aware of or should have been aware of the existence of Mr. Dagan's Confidentiality and Non-Competition Agreement.

80.     Defendant AMIS wrongfully and intentionally induced Mr. Dagan to breach his Confidentiality and Non-Competition Agreement by offering Mr. Dagan employment with AMIS and by hiring him.

81.     But for the wrongful acts of AMIS, Mr. Dagan would not have breached his Confidentiality and Non-Competition Agreement.

82.     As a result of AMIS's wrongful conduct, Plaintiffs have suffered damages and will continue to suffer damages and irreparable harm if not enjoined by this Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd. demand judgment against Defendants as follows:

A.     Imposing preliminary and permanent injunctions enjoining AMIS from (a) further breaching its agreement with PowerDsine; and (b) engaging in any manufacturing, sale or assembly arrangement with Broadcom or any other seller or supplier in connection with PoE

EX. E, pg. 72

products; (c) from having any further communications with Mr. Shimon Elkayam; and (d) from continuing to employ Mr. Sharon Dagan in any project or task relating to PoE; and (e) prohibiting anyone by or on behalf of AMIS from communicating with Mr. Dagan on anything relating to PoE for the duration of his non-compete agreement; and

   B.  Awarding PowerDsine compensatory damages against AMIS for breach of contract in an amount to be proven at trial of not less than $150 million; and

   C.  Awarding Plaintiffs their reasonable attorneys' fees, costs and disbursements in this action; and

   D.  Granting Plaintiffs such other and further relief that this Court may deem just and proper.

Dated:  July 19, 2007
    New York, New York

         CHADBOURNE & PARKE LLP

         By_____
           Walter G. Hanchuk (WH-7096)
           Dennis C. Hopkins (DH-3767)
           30 Rockefeller Plaza
           New York, New York  10112
           (212) 408-5100

         PowerDsine, Ltd.
           David Goren (DG-7760)
          General Counsel
          290 Broadhollow Road, #305
          Melville, NY  11747

         *Attorneys for Plaintiffs*
         PowerDsine, Inc.
         PowerDsine, Ltd.

14

EX. E, pg. 73

*MARS, MAS*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

POWERDSINE, INC. and POWERDSINE, LTD.,

                                    Plaintiffs,

              v.

AMI SEMICONDUCTOR, INC. and
AMI SEMICONDUCTOR BELGIUM BVBA,

                                    Defendants.

AMI SEMICONDUCTOR, INC. and
AMI SEMICONDUCTOR BELGIUM BVBA,

                                    Counterclaim-Plaintiffs,

              v.

POWERDSINE, INC. and POWERDSINE, LTD.,

                                    Counterclaim-Defendants,

              and

MICROSEMI CORPORATION,

                                    Third-Party Defendant.

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 9/28/07              │
└─────────────────────────────────┘
```

07 Civ. 6014 (SAS)(FM)
ECF Case

[PROPOSED] STIPULATION
AND PROTECTIVE ORDER

        This action includes allegations of misappropriation of confidential and proprietary

information, including trade secrets, that will require disclosure of highly competitive and

confidential information, of the parties and of third parties, involving the design, manufacture

and implementation of Power-over-Ethernet power distribution products and associated

commercial information.  This Protective Order ("Protective Order") is entered to facilitate the

production and receipt of information during discovery by the parties to this action:

Plaintiffs/Counterclaim-Defendants PowerDsine, Inc. and PowerDsine, Ltd. (collectively

"PowerDsine"); Third-Party Defendant Microsemi Corporation ("Microsemi");

Defendants/Counterclaim-Plaintiffs AMI Semiconductor, Inc. and AMI Semiconductor Belgium

BVBA (collectively "AMIS"), and by others, and to protect trade secrets and other confidential

*EX.E, pg.74*

research, design, development or commercial information that may be produced or otherwise disclosed during the course of this action.

NOW, THEREFORE, upon consideration of the record and pursuant to the provisions of Fed. R. Civ. P. 26(c),

IT IS ORDERED that:

### INFORMATION SUBJECT TO THIS ORDER

1.    (a)    For the purposes of this Protective Order, "CONFIDENTIAL INFORMATION" shall mean information or material which is (i) produced for or disclosed to a receiving party (either PowerDsine, AMIS or Microsemi), and (ii) reasonably and in good faith considered by a producing party (either PowerDsine, AMIS, Microsemi or another) to constitute sensitive commercial information or other confidential information that the producing party does not wish to disclose publicly, including confidential information previously disclosed between the parties, whether embodied in physical objects, documents, or the factual knowledge of persons; and which has been so designated by the producing party in the following manner or as described in paragraph 2 hereof.  "CONFIDENTIAL INFORMATION" contained in physical objects or documents, including any transcripts, exhibits, answers to interrogatories, etc., or copies thereof shall be designated by stamping or affixing thereto the legend:

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

(b)    For the purposes of this Protective Order, "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall mean "CONFIDENTIAL INFORMATION" reasonably and in good faith deemed by the producing party to include confidential technical information, such as research, design or development information, or highly sensitive business information, or trade secrets. "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" contained in physical objects or

2

EX. E, pg. 75

documents, including any transcripts, exhibits, answers to interrogatories, etc., or copies thereof, shall be designated by stamping or affixing thereto the legend:

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY -<br>SUBJECT TO PROTECTIVE ORDER

2.    "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" not reduced to documentary, tangible or physical form or which cannot be conveniently designated pursuant to paragraph 1 hereof should be designated as appropriate by the producing party by advising the receiving party in writing prior to its production, contemporaneously therewith, or as soon as possible thereafter.

3.    Any "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" designated as set forth in paragraphs 1 and 2 hereof shall be handled by the receiving parties in accordance with this Protective Order. The designation of information as "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" pursuant to this Protective Order shall not be construed as a concession by a producing party that such information is relevant or material to any issue or is otherwise discoverable, or by a receiving party that such information is, in fact, a trade secret or confidential research, design, development or commercial information.

4.    The restrictions set forth in any of the paragraphs hereof with respect to "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall not apply to:

(a)    Any information which at the time of the disclosure to a receiving party is in the public domain;

3

*EX. F, pg. 76*

(b)    Any information which after disclosure to a receiving party becomes part of the public domain as a result of events not involving a violation of this Protective Order;

(c)    Any information which a receiving party can show was rightfully within its possession at the time of the disclosure; or

(d)    Any information which a receiving party can show was received by it from a source who obtained the information lawfully or under no obligation of confidentiality to the producing party.

The fact, however, that the disclosing party possesses this information may itself be confidential, and so, absent an agreement with the disclosing party, the disclosing party's possession of such information is to be considered "CONFIDENTIAL INFORMATION." In such a case, since it may not be readily apparent, the disclosing party must clearly indicate to the receiving party that the fact that the disclosing party possesses the information is what constitutes the basis for the claim of confidentiality.

Prior to disclosing any such information to a person not authorized to receive "CONFIDENTIAL INFORMATION" pursuant to paragraphs 5 and 8 of this Protective Order, the receiving party shall advise the producing party of the grounds on which the receiving party contends that the information should not be considered under the "CONFIDENTIAL" category and shall follow the procedure specified in paragraph 18 hereof.

**PERSONS AUTHORIZED TO RECEIVE "CONFIDENTIAL INFORMATION" OR "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION"**

5.    (a)    For the purposes of this Protective Order an "authorized recipient" of "CONFIDENTIAL INFORMATION" shall mean:

(i)    The Court, Court personnel, and court reporters and videographers engaged in connection with his action;

4

EX.E, pg. 77

(ii)   Walter G. Hanchuk and Dennis C. Hopkins, each of CHADBOURNE & PARKE LLP, counsel for PowerDsine and Microsemi, their partners, associates and their information systems, stenographic, clerical and paralegal employees whose functions require access to such information;

(iii)   Michael A. Oblon, Donald J. Friedman, and James M. Denaro, each of PERKINS COIE LLP, counsel for AMIS, their partners, associates and their information systems, stenographic, clerical and paralegal employees whose functions require access to such information;

(iv)   Brian S. Fraser and Jon Connolly of Richards Kibbe & Orbe LLP, counsel for AMIS, their partners, associates and their information systems, stenographic, clerical and paralegal employees whose functions require access to such information;

(v)   David Goren, in-house counsel for PowerDsine and Microsemi, and any non-technical legal support whose functions require access to such information;

(vi)   Darlene Gerry and Yolande Debusschop, in-house counsel for AMIS, and any non-technical legal support whose functions require access to such information;

(vii)   Any independent consultant, expert or other person, including but not limited to graphics consultants and jury consultants, who obtains authorization to receive such information pursuant to paragraph 8(a) of this Protective Order; and

(b)   For the purposes of this Protective Order an "authorized recipient" of

5

EX. E, p. 78

"HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall mean outside counsel for the parties to this action at Chadbourne & Parke LLP, Perkins Coie LLP, and Richards Kibbe & Orbe LLP who are not employees of the parties, as well as their authorized information systems, secretarial and legal assistance staff, the Court and Court personnel as provided in paragraph 12, and consultants, experts, and their staff who are not employees of the parties and are retained by outside counsel for purposes of this litigation and qualified pursuant to paragraph 8(b) hereof.

**LIMITATIONS ON THE USE OF "CONFIDENTIAL INFORMATION" OR "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION"**

6.     "CONFIDENTIAL INFORMATION" and "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall be held in confidence by each authorized recipient to whom it is disclosed, shall be used only for purposes of this action, shall not be used for any other purpose, and shall not be disclosed to any person who is not an authorized recipient. All produced "CONFIDENTIAL INFORMATION" and "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall be carefully maintained so as to preclude access by persons who are not authorized recipients.

7.     Software Materials and Software Materials Work Product

(a) "Software Materials" shall include confidential, proprietary software, object code, firmware, and source code, and any other materials that either disclose such software or code or describe its structure, architecture, and functionality in technical detail. "Software Materials Work Product" shall include any and all notes, memoranda, and work product resulting from the inspection of Software Materials. All such materials must be prominently stamped "SOFTWARE MATERIALS" or "SOFTWARE MATERIALS WORK PRODUCT." Software Materials and Software Materials Work Product shall be used by a recipient of software

6

*EX. E, pg. 79*

materials solely for the purpose of conducting this litigation, and not for any other purpose whatsoever, and such information shall not be disclosed to anyone except as provided herein. No expert or consultant, as designated under Paragraph 8(b), shall review or gain access to Software Materials or Software Materials Work Product unless and until he or she has executed the Stipulation and Protective Order undertaking, provided in Attachment A, in addition to satisfying the requirements provided in paragraph 8(b). Any producing party or non-party to this litigation may designate Software Materials as "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION." Software Materials so designated, and Software Materials Work Product derived therefrom, shall be subject to all of the protections afforded to materials so designated in addition to the following protections:

(b) One copy of any files of such Software Materials shall be produced on portable electronic storage media and shall be held exclusively at the offices of the counsel for the recipient of the Software Materials. Any Software Materials produced on the portable electronic storage media shall be protected by a commercially available and accepted means of encryption. Where counsel for Plaintiffs/Counterclaim-Defendants or Third-Party Defendants is the recipient of Software Materials, the copy of any files of such Software Materials shall be held at the offices of Chadbourne and Parke LLP, located at 30 Rockefeller Plaza, New York, New York 10112. Where counsel for Defendants/Counterclaim-Plaintiffs is the recipient of Software Materials, the copy of any files of such Software Materials shall be held at the offices of Perkins Coie LLP, located at 607 Fourteenth Street NW, Washington, D.C. 20005.

(c) Counsel for the recipient shall designate one of its attorneys to function as the Primary Custodian of any Software Materials produced under this Order, and shall designate another of its attorneys to function as a Deputy Custodian in the absence from the office or other

7

EX. F, pg. 80

unavailability of the designated Primary Custodian. If circumstances reasonably warrant, another attorney may be substituted as Primary or Deputy Custodian.

(d) Except as hereinafter provided, no portion of the copies of Software Materials will be duplicated by the recipient. The Primary and Deputy Custodians will ensure that Software Materials will be protected from dissemination outside of this litigation, including by the following means:

(i) Software Materials will be used on a stand-alone computer that is not networked to any other computers, which has no intranet or Internet access, and which computer cannot be physically accessed by any persons other than those permitted access under this Order.

(ii) At each location, any Software Materials, including the stand-alone computer referenced in paragraph 7(d)(i), will be kept in a locked cabinet when not in use.

(iii) At each location, counsel is permitted to copy information from the portable electronic storage media only for the sole purpose of transferring the data to the hard drive of the stand-alone computer.

(iv) Subject to the logging requirements of paragraph 7(d)(v), Software Materials may be accessed by only (i) counsel of record and necessary law firm support staff working under the lawyers' supervision, and (ii) consultants and experts who have signed the Stipulation and Protective Order provided in Attachment A and who qualify for access to the materials in the manner set forth in paragraph 8(b). Any dispute over the access of any designated consultant or expert to Software Materials shall be resolved pursuant to paragraph 8(b) of this Order.

8

EX.E, p.81

(v)    At each location, counsel for the recipient will maintain a log of those counsel of record, support personnel working under their direct supervision, and experts or consultants who have accessed Software Materials. The log entries will include the date and time of any such access. Before gaining access for the first time to Software Materials, each person otherwise qualifying under paragraph 7(d)(iv) will review this Order and attest to having read and understood it, which also will be recorded on the log. The logs kept at each location will be provided to counsel for the producing party upon reasonable request. In the event of a dispute involving any alleged violation of this Order, counsel for the producing party may obtain immediate copies of the logs from each location by written notice to the Primary and Deputy Custodians at each location.

(vi)    Except as needed for use in depositions, briefing, or trial, or as provided in paragraph 7(e) below, no physical copies of Software Materials, or Software Materials Work Product containing the text of Software Materials or portions of the code itself, shall be taken from the offices of counsel for the recipient.

(vii)    In the event that a Primary or Deputy Custodian becomes aware of any breach of the provisions of this Order, he or she shall promptly alert counsel for the producing party and, if necessary, the Court of any such breach.

(e) Plaintiffs have agreed that they will not attempt to reverse engineer, decompile, or modify Software Materials. Writing software to interact with, test, or simulate the functionality of Software Materials shall not constitute prohibited reverse engineering, decompiling, or modifying the Software Materials. Modifying portions of source code and then compiling the source code to test software does not constitute prohibited reverse engineering, decompiling, or modifying the source code.

9

EX.E, p.82

(f) Other than for purposes of this litigation, subject to the restrictions of this Order, those permitted access to Software Materials under this Order shall not disclose the text of the Software Materials or portions of the code itself to any other person at any time and shall never use any information gained from access to or review of the Software Materials for any purpose or reasons. So long as the text of the Software Materials or portions of any software or firmware itself are not disclosed, this does not preclude consultants, experts, or counsel of record from providing Software Materials Work Product to in-house counsel for review.

(g) Upon the conclusion of this litigation, the parties shall delete all Software Materials from any storage media associated with the stand-alone computer referenced in paragraph 7(d)(i) and overwrite the bits used to store those files on the computer's storage media using commercially accepted secure erase software. Any media or storage device not amenable to secure erase shall be physically destroyed.

(h) To the extent that it becomes necessary or appropriate to do so, the parties may jointly agree to modify the procedures and provisions of this paragraph 7 without leave of court if done so in writing signed by counsel on behalf of all parties.

8.   (a)   Should a receiving party find it necessary in the preparation for trial of this action to disclose a producing party's "CONFIDENTIAL INFORMATION" to (i) an independent technical, graphics, jury, or business consultant retained by the receiving party or its attorneys for the purpose of assisting in connection with the above actions, (ii) business or technical persons employed by a party to the above action whose functions require that they have access to "CONFIDENTIAL INFORMATION" in connection with the prosecution or defense of this action, or (iii) any other person who is not an authorized recipient under the terms of this Protective Order and whose assistance may be required for preparation for and/or trial of this

10

EX. E, pg. 83

action, then the consultant or other person to whom disclosure is to be made shall execute a written signed assurance in the form of Attachment A hereto for "CONFIDENTIAL INFORMATION" stating that he or she has read and understood this Protective Order and agrees to be bound by its terms. The receiving party shall retain all such written signed assurances and promptly provide a copy to the producing party.

(b) Should a receiving party find it necessary in the preparation for trial of this action to disclose a producing party's "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" to an independent technical, graphics, jury or business consultant retained by the receiving party or its attorneys for the purpose of assisting in connection with this action, then written notice shall be served on the producing party at least ten (10) days prior to the disclosure, identifying the consultant or other person, his or her address and telephone number, and including a copy of the person's resume or curriculum vitae, describing all relevant employment and all legal actions in which such consult has been involved and in what capacity he or she has been involved, his or her present employer and his or her position. Such notice shall be accompanied by a written signed assurance by the consultant or other person to whom disclosure is to be made, in the form of Attachment B hereto for "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" stating that he or she has read and understood this Protective Order and agrees to be bound by its terms. If the producing party objects to the proposed disclosure, it shall have ten (10) business days after the receipt of the notice to provide, via facsimile, email or overnight courier, the receiving party with a written objection to the disclosure, which objection shall state the reasons for objecting to this disclosure. The disclosure of "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall not be made to such consultant or other person until approval is

11

EX. F, pg. 84

given by the producing party or until ten (10) business days after the producing party's receipt of the notice, whichever is earlier; provided, however, that if the producing party so objects, such written objection shall stay disclosure to such person. The parties shall meet and confer concerning such written objection within ten (10) days of the service thereof. If such written objection remains unresolved after meeting and conferring, the party requesting disclosure to said person may submit the matter to the Magistrate Judge for decision. A party seeking Court review of the Magistrate Judge's decision on the matter may proceed with such disclosure only as and when the Court orders.

(c) Should a receiving party find it necessary in the preparation for trial of this action to disclose a producing party's "CONFIDENTIAL INFORMATION" and/or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" to a vendor for document processing, such vendor shall execute a written, signed assurance in the form of Attachment B hereto for "CONFIDENTIAL INFORMATION" stating that he or she has read and understood this Protective Order and agrees to be bound by its terms. The disclosing party shall retain all such written signed assurances. For the purposes of processing documents for a receiving party only, such vendor shall be permitted access to both "CONFIDENTIAL INFORMATION" and "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" without the requirement of notice to the producing party as required by paragraph 8(b) herein.

9.    Nothing in this Protective Order shall prohibit the transmission or communication of "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" between or among authorized recipients (a) by hand delivery, face to face conference; (b) in sealed envelopes or containers via the mails or an

EX. F, pg - 85

established freight, delivery or messenger service; or (c) by telephone, telegram, facsimile or other electronic transmission system, if, under the circumstances, there is no reasonable likelihood that the transmission will be intercepted or misused by any person who is not an authorized recipient.

10.    An attorney, who is an authorized recipient under the terms of paragraph 5 of this Protective Order, may render advice to his or her client with respect to this action and rely generally upon confidential information but provide no specific confidential information. However, in rendering advice or in otherwise communicating with his or her client, such attorney shall not produce any such materials or disclose the information contained in any "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" produced by another party herein where such disclosure would not otherwise be permitted under the terms of this Protective Order.

11.    In connection with any oral hearing, trial or proceeding concerning the above actions before the Court, prior to disclosure in open court of "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION," attorneys for the party seeking to make such disclosures shall request at the oral hearing, trial or proceeding that the Court provide appropriate *in camera* treatment of any "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" necessary to be disclosed in relation to such hearing, trial or proceeding or any other procedure appropriate to protect the confidentiality of the information.

12.    The Clerk of this Court is directed to maintain under seal all documents and transcripts of deposition testimony filed in Court which have been designated, in whole or in

13

EX.E, pg. 86

part, as "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE

ATTORNEYS EYES ONLY INFORMATION" in this action.  Such documents shall be filed in

the Clerk's office in sealed envelopes with a copy of the caption page affixed to the outside of the

envelope, along with the legend "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER"

or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY – SUBJECT TO

PROTECTIVE ORDER" and a statement substantially in the following form:

> This envelope contains Confidential Material filed by [name of
> party] and is not to be opened, nor the contents to be displayed or
> revealed, by anyone other than authorized court personnel, except
> by Court Order.

In the event that a party wishes to use any "CONFIDENTIAL INFORMATION" or "HIGHLY

CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" in any

affidavits, briefs, memoranda of law or any other papers filed in Court in this action, such

"CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE

ATTORNEYS EYES ONLY INFORMATION" used therein shall be filed and maintained under

seal by the Court as set forth in this paragraph.

13.     Any person examined as a witness at deposition or trial may testify concerning all

"CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE

ATTORNEYS EYES ONLY INFORMATION" of which such person has prior knowledge.

Without in any way restricting the foregoing, the receiving party cannot disclose

"CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE

ATTORNEYS EYES ONLY INFORMATION" not otherwise known or accessible to the

witness unless the witness is employed by the producing party or unless and until the receiving

party complies with paragraph 8 of this Protective Order.  If the witness is represented by

counsel not subject to this Protective Order, the witness's counsel must agree, either in writing or

*EX.E, p9.87*

on the record, to abide by this Protective Order prior to the receiving party disclosing or soliciting "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" in the presence of said counsel.

14.    With regard to the transcript of any deposition which has not been the subject of a designation under this Protective Order prior to or during the taking of such deposition, the producing party, or any party to this action, shall designate those portions of the transcript which constitute "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" within ten (10) business days after any such party receives a copy of the deposition transcript but in any event no later than fifteen (15) business days after any such party is notified in writing of the availability of the deposition transcript. The portions so designated shall thereafter be separated and treated as "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" and shall be subject to this Protective Order.

15.    Any inspection of original documents and things of a producing party by a receiving party, including the initial review of documents produced by a third party, shall be conducted only by outside counsel listed in paragraph 5 of this Protective Order and all such original documents and physical objects produced during discovery shall in all other respects initially be considered, as a whole, to constitute "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" and shall be subject to this Protective Order. After the receiving party has selected the documents or physical objects for copying, and before copies are released to the receiving party or contemporaneously therewith, the producing party, or any party to this action, shall have fifteen (15) business days to review the selected documents or physical objects, and to mark, or to designate for marking, in accordance with Paragraphs 1

15

EX.E, pg. 88

and 2 hereof, those which it considers to contain "CONFIDENTIAL INFORMATION" or

"HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION."

16.    Where the producing party, in good faith, believes that information or other

material contained in a document is confidential and not relevant to the issues of this action, is

not responsive to any request, is withheld due to a claim of privilege, is responsive to a request

but is withheld on grounds other than privilege, or is withheld pursuant to any protective order,

such information may be redacted in accordance with a method described in section B.1. of the

Suggested Rules Of Discovery Practice of the Honorable Judge Shira A. Scheindlin.

17.    The inadvertent or unintentional production of discovery materials shall not

operate as a waiver of any of the producing party's objections to the production of such material,

including but not limited to withholding in whole or in part on the basis of privilege or immunity,

production without designation as "CONFIDENTIAL INFORMATION" or "HIGHLY

CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION," or production

without redaction of non-relevant confidential information under the terms of this Protective

Order. In the event that any document subject to a claim of privilege or immunity is produced,

the producing party shall notify the receiving party of such fact. Upon receipt of such notice, the

receiving party shall make all reasonable efforts to retrieve or destroy all copies, if any, of such

document and to prevent further use or disclosure of the document and information contained

therein, and shall return all such copies to the producing party or certify in writing that they have

been destroyed. Any document that is produced without being designated "CONFIDENTIAL

INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

INFORMATION" may be so designated or redesignated, with respect to future disclosure by the

producing party, and the receiving party shall make all reasonable efforts to retrieve all copies, if

16

*EX.E, pg.89*

any, of such document disclosed to persons other than those listed in paragraph 5 of this Protective Order as authorized to receive such document as subsequently designated or redesignated and to prevent further use or disclosure of confidential information contained therein by such persons. In the event that any document is produced with non-relevant confidential information unredacted, the producing party may notify the receiving party of such fact and provide a redacted copy of such document to the receiving party. Upon receipt of such notice, the receiving party shall make all reasonable efforts to retrieve all unredacted copies, if any, of such document and to prevent further use or disclosure of the information to be redacted and shall return all such unredacted copies to the producing party or certify in writing that they have been destroyed.

18.     Nothing in this Protective Order shall prevent a receiving party from contending that any or all "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" is not confidential and/or not entitled to the level of confidentiality placed on the information by the producing party. Any receiving party may at any time request the producing party to cancel the "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" designation or downgrade the level of confidentiality with respect to any document, object and/or information and to agree that thereafter such document, object and/or information is to be no longer subject to the provisions of this Protective Order. Such request shall be written, shall be served on counsel for the producing party and shall particularly identify the "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" that the receiving party contends is not confidential and/or should be downgraded and the reasons supporting its contentions. The

17

EX. E, pg. 90

request shall be deemed denied unless within ten (10) business days after receipt of such request, the producing party shall in writing approve the request. Thereafter, the receiving party may apply to the Magistrate Judge for release or downgrade of the specified "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" from this Protective Order. A party seeking Court review of the Magistrate's decision shall follow the procedure specified by applicable procedural rules and practices. The party seeking to protect the information and/or document bears the burden, in any application to the Magistrate, to establish the appropriateness of the protection or degree of protection sought.

19.    This Protective Order shall be without prejudice to the right of any party to oppose production of any information for lack of timeliness or relevance or any other ground other than the presence of "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION."

20.    Nothing in this Protective Order shall be deemed in any way to reduce or abrogate any preexisting confidentiality obligations owed to third parties and/or parties to this action.

21.    Nothing in this Protective Order shall be deemed in any way to reduce or enlarge the scope of discovery provided under the Federal Rules of Civil Procedure.

## MISCELLANEOUS PROVISIONS

22.    Any notice required or permitted under this Protective Order shall be in writing and shall be served upon all counsel who have appeared in this action (i) by hand delivery or (ii) by facsimile or email with a confirmation copy by overnight delivery. Any notice served by method (ii) shall be deemed to have been served on the day following the day of service by facsimile or email. In any dispute concerning the date that any notice was served by method (ii) under this paragraph, the party serving such notice must produce confirmation of service in order to prove that service was effected on a particular date.

18

EX. E, pg. 91

23.    Any of the notice requirements herein may be waived, in whole or in part, but only by a writing signed by the attorney of record for the party against whom such waiver will be effective or by a statement by such attorney made on the record in the course of a deposition or a court hearing.

24.    Within sixty (60) days of final termination of the above action, including all appeals, each receiving party and its authorized recipients shall, at its option, either return to the producing party or destroy all physical objects and documents which embody "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" and which were received from the producing party, and shall destroy, in whatever form stored or reproduced, all other physical objects and documents, including, but not limited to, pleadings, correspondence, memoranda, notes and other work product materials, which contain or refer to "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" except that trial counsel shall have the right to maintain a copy of all correspondence, pleadings, deposition transcripts and exhibits thereto, documents referred to in pleadings or introduced into evidence and the trial counsel's work product materials. Promptly, upon destruction of any documents or physical objects pursuant to this paragraph, the receiving party shall confirm to the producing party in writing which of the producing party's "CONFIDENTIAL INFORMATION" and "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" have been destroyed and shall furnish to the producing party copies of all written assurances signed pursuant to paragraph 8(a) of this Protective Order.

19

EX. E, pg. 92

25. This Protective Order is entered without prejudice to the right of any party to apply to the Court at any time for additional protection, or to relax or rescind the restrictions of this Protective Order, when convenience or necessity require.

26. The parties also may amend or modify any provision of this Protective Order by mutual agreement which agreement shall be embodied in a written stipulation to be submitted for approval by the Court.

27. If any "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" is disclosed to any person other than in a manner authorized by this Protective Order, the party responsible for the disclosure or knowledgeable of such disclosure, upon discovery of the disclosure, shall immediately inform the producing party of all facts pertinent to the disclosure that, after due diligence and prompt investigation, are known to the party responsible for the disclosure or knowledgeable of the disclosure (including the name, address, phone number, and employer of the person to whom the disclosure was made), and shall immediately make all reasonable efforts to prevent further disclosure by each unauthorized person who received such information.

28. This Protective Order and the undertakings signed pursuant to this Protective Order shall survive termination of this action and continue in full force and effect thereafter.

29. The parties agree that, pending approval by the Court, this Protective Order, including any agreed amendments or modifications made pursuant to paragraph 26 of this Protective Order, shall be effective as if approved and, specifically, that any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order had been entered by the Court on the date of execution by counsel for the respective parties.

EX. E, pg. 93

IT IS SO ORDERED, with the consent of the parties, this 28 day of

Sept , 2007.

Honorable Frank Maas
United States Magistrate Judge

SHIRA A SCHEINDLIN

21

EX. E, P9. 94

Dated: _September 21_, 2007

CHADBOURNE & PARKE LLP

By _____

Walter G. Hanchuk (WH-7096)
Dennis C. Hopkins (DH-3767)
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100

*Attorneys for Plaintiffs/Counterclaim Defendants,*
  PowerDsine, Inc. and PowerDsine, Ltd.
*Attorneys for Third-Party Defendant,*
  Microsemi Corporation

Dated: _September 24_, 2007

PERKINS COIE LLP

By _____

Michael A. Oblon
607 Fourteenth Street, N.W.
Washington, D.C. 20005
(202) 628-6600

*Attorneys for Defendants/Counterclaim-Plaintiffs,*
  AMI Semiconductor, Inc. and
  AMI Semiconductor Belgium BVBA

22

EX. E, P9. 95

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

POWERDSINE, INC. and POWERDSINE, LTD.,

                      Plaintiffs,

        v.

AMI SEMICONDUCTOR, INC. and
AMI SEMICONDUCTOR BELGIUM BVBA,

                      Defendants.

AMI SEMICONDUCTOR, INC. and
AMI SEMICONDUCTOR BELGIUM BVBA,

                      Counterclaim-Plaintiffs,

        v.

POWERDSINE, INC. and POWERDSINE, LTD.,

                      Counterclaim-Defendants,

        and

MICROSEMI CORPORATION,

                      Third-Party Defendant.

07 Civ. 6014 (SAS)(FM)
ECF Case

**STIPULATION**
**AND PROTECTIVE ORDER**

**UNDERTAKING OF** _____ **(NAME)**
**FOR ACCESS TO HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES**
**ONLY INFORMATION**

STATE OF              )
                      : ss:
COUNTY OF            )

      I, _____,

being duly sworn, state that:

      1.    My address is _____

_____.

      2.    My present employer is _____.

*EX. E, pg. 96*

3.     My present occupation or job description is _____

_____.

4.     I have received a copy of the Protective Order ("Protective Order") entered in the above-captioned action as signed by the Honorable Frank Maas, United States Magistrate Judge on _____ __, 200_.

5.     I have carefully read and understand the provisions of the Protective Order.

6.     I will comply with all of the provisions of the Protective Order.

7.     I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of the above-captioned action, any "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" which is disclosed to me.

8.     I will return all "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" which comes into my possession, and documents or things which I have prepared relating thereto, to counsel for the party by whom I am employed or retained.

9.     I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in the above-captioned action.

_____
[Name]

Sworn to before me this
_____ day of _____, 200_

_____
        Notary Public

*EX. 5 pg. 97*

# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

POWERDSINE, INC. and POWERDSINE, LTD.,

Plaintiffs,

v.

AMI SEMICONDUCTOR, INC. and
AMI SEMICONDUCTOR BELGIUM BVBA,

Defendants.

AMI SEMICONDUCTOR, INC. and
AMI SEMICONDUCTOR BELGIUM BVBA,

Counterclaim-Plaintiffs,

v.

POWERDSINE, INC. and POWERDSINE, LTD.,

Counterclaim-Defendants,

and

MICROSEMI CORPORATION,

Third-Party Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/28/07

07 Civ. 6014 (SAS)(FM)
ECF Case

[PROPOSED] STIPULATION
AND PROTECTIVE ORDER

This action includes allegations of misappropriation of confidential and proprietary
information, including trade secrets, that will require disclosure of highly competitive and
confidential information, of the parties and of third parties, involving the design, manufacture
and implementation of Power-over-Ethernet power distribution products and associated
commercial information. This Protective Order ("Protective Order") is entered to facilitate the
production and receipt of information during discovery by the parties to this action:
Plaintiffs/Counterclaim-Defendants PowerDsine, Inc. and PowerDsine, Ltd. (collectively
"PowerDsine"); Third-Party Defendant Microsemi Corporation ("Microsemi");
Defendants/Counterclaim-Plaintiffs AMI Semiconductor, Inc. and AMI Semiconductor Belgium
BVBA (collectively "AMIS"), and by others, and to protect trade secrets and other confidential

EX. F, pg. 99

research, design, development or commercial information that may be produced or otherwise disclosed during the course of this action.

NOW, THEREFORE, upon consideration of the record and pursuant to the provisions of Fed. R. Civ. P. 26(c),

IT IS ORDERED that:

### INFORMATION SUBJECT TO THIS ORDER

1.    (a)     For the purposes of this Protective Order, "CONFIDENTIAL INFORMATION" shall mean information or material which is (i) produced for or disclosed to a receiving party (either PowerDsine, AMIS or Microsemi), and (ii) reasonably and in good faith considered by a producing party (either PowerDsine, AMIS, Microsemi or another) to constitute sensitive commercial information or other confidential information that the producing party does not wish to disclose publicly, including confidential information previously disclosed between the parties, whether embodied in physical objects, documents, or the factual knowledge of persons; and which has been so designated by the producing party in the following manner or as described in paragraph 2 hereof. "CONFIDENTIAL INFORMATION" contained in physical objects or documents, including any transcripts, exhibits, answers to interrogatories, etc., or copies thereof shall be designated by stamping or affixing thereto the legend:

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

(b)     For the purposes of this Protective Order, "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall mean "CONFIDENTIAL INFORMATION" reasonably and in good faith deemed by the producing party to include confidential technical information, such as research, design or development information, or highly sensitive business information, or trade secrets. "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" contained in physical objects or

2

EX. F, Pg. 100

documents, including any transcripts, exhibits, answers to interrogatories, etc., or copies thereof, shall be designated by stamping or affixing thereto the legend:

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY -
SUBJECT TO PROTECTIVE ORDER

2.      "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" not reduced to documentary, tangible or physical form or which cannot be conveniently designated pursuant to paragraph 1 hereof should be designated as appropriate by the producing party by advising the receiving party in writing prior to its production, contemporaneously therewith, or as soon as possible thereafter.

3.      Any "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" designated as set forth in paragraphs 1 and 2 hereof shall be handled by the receiving parties in accordance with this Protective Order. The designation of information as "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" pursuant to this Protective Order shall not be construed as a concession by a producing party that such information is relevant or material to any issue or is otherwise discoverable, or by a receiving party that such information is, in fact, a trade secret or confidential research, design, development or commercial information.

4.      The restrictions set forth in any of the paragraphs hereof with respect to "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall not apply to:

(a)      Any information which at the time of the disclosure to a receiving party is in the public domain;

3

*EX. F, pg. 101*

(b)     Any information which after disclosure to a receiving party becomes part of the public domain as a result of events not involving a violation of this Protective Order;

(c)     Any information which a receiving party can show was rightfully within its possession at the time of the disclosure; or

(d)     Any information which a receiving party can show was received by it from a source who obtained the information lawfully or under no obligation of confidentiality to the producing party.

The fact, however, that the disclosing party possesses this information may itself be confidential, and so, absent an agreement with the disclosing party, the disclosing party's possession of such information is to be considered "CONFIDENTIAL INFORMATION." In such a case, since it may not be readily apparent, the disclosing party must clearly indicate to the receiving party that the fact that the disclosing party possesses the information is what constitutes the basis for the claim of confidentiality.

Prior to disclosing any such information to a person not authorized to receive "CONFIDENTIAL INFORMATION" pursuant to paragraphs 5 and 8 of this Protective Order, the receiving party shall advise the producing party of the grounds on which the receiving party contends that the information should not be considered under the "CONFIDENTIAL" category and shall follow the procedure specified in paragraph 18 hereof.

**PERSONS AUTHORIZED TO RECEIVE "CONFIDENTIAL INFORMATION" OR "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION"**

5.     (a)     For the purposes of this Protective Order an "authorized recipient" of "CONFIDENTIAL INFORMATION" shall mean:

(i)     The Court, Court personnel, and court reporters and videographers engaged in connection with his action;

4

*EX F, pg. 102*

(ii)     Walter G. Hanchuk and Dennis C. Hopkins, each of

CHADBOURNE & PARKE LLP, counsel for PowerDsine and Microsemi, their

partners, associates and their information systems, stenographic, clerical and

paralegal employees whose functions require access to such information;

(iii)    Michael A. Oblon, Donald J. Friedman, and James M. Denaro,

each of PERKINS COIE LLP, counsel for AMIS, their partners, associates and

their information systems, stenographic, clerical and paralegal employees whose

functions require access to such information;

(iv)     Brian S. Fraser and Jon Connolly of Richards Kibbe & Orbe LLP,

counsel for AMIS, their partners, associates and their information systems,

stenographic, clerical and paralegal employees whose functions require access to

such information;

(v)      David Goren, in-house counsel for PowerDsine and Microsemi,

and any non-technical legal support whose functions require access to such

information;

(vi)     Darlene Gerry and Yolande Debusschop, in-house counsel for

AMIS, and any non-technical legal support whose functions require access to

such information;

(vii)    Any independent consultant, expert or other person, including but

not limited to graphics consultants and jury consultants, who obtains authorization

to receive such information pursuant to paragraph 8(a) of this Protective Order;

and

(b)      For the purposes of this Protective Order an "authorized recipient" of

5

EX. F, P9/03

"HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall mean outside counsel for the parties to this action at Chadbourne & Parke LLP, Perkins Coie LLP, and Richards Kibbe & Orbe LLP who are not employees of the parties, as well as their authorized information systems, secretarial and legal assistance staff, the Court and Court personnel as provided in paragraph 12, and consultants, experts, and their staff who are not employees of the parties and are retained by outside counsel for purposes of this litigation and qualified pursuant to paragraph 8(b) hereof.

### LIMITATIONS ON THE USE OF "CONFIDENTIAL INFORMATION" OR "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION"

6.    "CONFIDENTIAL INFORMATION" and "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall be held in confidence by each authorized recipient to whom it is disclosed, shall be used only for purposes of this action, shall not be used for any other purpose, and shall not be disclosed to any person who is not an authorized recipient. All produced "CONFIDENTIAL INFORMATION" and "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall be carefully maintained so as to preclude access by persons who are not authorized recipients.

7.    Software Materials and Software Materials Work Product

(a) "Software Materials" shall include confidential, proprietary software, object code, firmware, and source code, and any other materials that either disclose such software or code or describe its structure, architecture, and functionality in technical detail. "Software Materials Work Product" shall include any and all notes, memoranda, and work product resulting from the inspection of Software Materials. All such materials must be prominently stamped "SOFTWARE MATERIALS" or "SOFTWARE MATERIALS WORK PRODUCT." Software Materials and Software Materials Work Product shall be used by a recipient of software

6

EX. F, Pg 104

materials solely for the purpose of conducting this litigation, and not for any other purpose whatsoever, and such information shall not be disclosed to anyone except as provided herein. No expert or consultant, as designated under Paragraph 8(b), shall review or gain access to Software Materials or Software Materials Work Product unless and until he or she has executed the Stipulation and Protective Order undertaking, provided in Attachment A, in addition to satisfying the requirements provided in paragraph 8(b). Any producing party or non-party to this litigation may designate Software Materials as "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION." Software Materials so designated, and Software Materials Work Product derived therefrom, shall be subject to all of the protections afforded to materials so designated in addition to the following protections:

(b) One copy of any files of such Software Materials shall be produced on portable electronic storage media and shall be held exclusively at the offices of the counsel for the recipient of the Software Materials. Any Software Materials produced on the portable electronic storage media shall be protected by a commercially available and accepted means of encryption. Where counsel for Plaintiffs/Counterclaim-Defendants or Third-Party Defendants is the recipient of Software Materials, the copy of any files of such Software Materials shall be held at the offices of Chadbourne and Parke LLP, located at 30 Rockefeller Plaza, New York, New York 10112. Where counsel for Defendants/Counterclaim-Plaintiffs is the recipient of Software Materials, the copy of any files of such Software Materials shall be held at the offices of Perkins Coie LLP, located at 607 Fourteenth Street NW, Washington, D.C. 20005.

(c) Counsel for the recipient shall designate one of its attorneys to function as the Primary Custodian of any Software Materials produced under this Order, and shall designate another of its attorneys to function as a Deputy Custodian in the absence from the office or other

7

EX. F, P. 105

unavailability of the designated Primary Custodian. If circumstances reasonably warrant, another attorney may be substituted as Primary or Deputy Custodian.

(d) Except as hereinafter provided, no portion of the copies of Software Materials will be duplicated by the recipient. The Primary and Deputy Custodians will ensure that Software Materials will be protected from dissemination outside of this litigation, including by the following means:

(i)   Software Materials will be used on a stand-alone computer that is not networked to any other computers, which has no intranet or Internet access, and which computer cannot be physically accessed by any persons other than those permitted access under this Order.

(ii)   At each location, any Software Materials, including the stand-alone computer referenced in paragraph 7(d)(i), will be kept in a locked cabinet when not in use.

(iii)   At each location, counsel is permitted to copy information from the portable electronic storage media only for the sole purpose of transferring the data to the hard drive of the stand-alone computer.

(iv)   Subject to the logging requirements of paragraph 7(d)(v), Software Materials may be accessed by only (i) counsel of record and necessary law firm support staff working under the lawyers' supervision, and (ii) consultants and experts who have signed the Stipulation and Protective Order provided in Attachment A and who qualify for access to the materials in the manner set forth in paragraph 8(b). Any dispute over the access of any designated consultant or expert to Software Materials shall be resolved pursuant to paragraph 8(b) of this Order.

8

EXF. p9. 106

(v)    At each location, counsel for the recipient will maintain a log of those counsel of record, support personnel working under their direct supervision, and experts or consultants who have accessed Software Materials. The log entries will include the date and time of any such access. Before gaining access for the first time to Software Materials, each person otherwise qualifying under paragraph 7(d)(iv) will review this Order and attest to having read and understood it, which also will be recorded on the log. The logs kept at each location will be provided to counsel for the producing party upon reasonable request. In the event of a dispute involving any alleged violation of this Order, counsel for the producing party may obtain immediate copies of the logs from each location by written notice to the Primary and Deputy Custodians at each location.

(vi)    Except as needed for use in depositions, briefing, or trial, or as provided in paragraph 7(e) below, no physical copies of Software Materials, or Software Materials Work Product containing the text of Software Materials or portions of the code itself, shall be taken from the offices of counsel for the recipient.

(vii)    In the event that a Primary or Deputy Custodian becomes aware of any breach of the provisions of this Order, he or she shall promptly alert counsel for the producing party and, if necessary, the Court of any such breach.

(e) Plaintiffs have agreed that they will not attempt to reverse engineer, decompile, or modify Software Materials. Writing software to interact with, test, or simulate the functionality of Software Materials shall not constitute prohibited reverse engineering, decompiling, or modifying the Software Materials. Modifying portions of source code and then compiling the source code to test software does not constitute prohibited reverse engineering, decompiling, or modifying the source code.

9

(f) Other than for purposes of this litigation, subject to the restrictions of this Order, those permitted access to Software Materials under this Order shall not disclose the text of the Software Materials or portions of the code itself to any other person at any time and shall never use any information gained from access to or review of the Software Materials for any purpose or reasons. So long as the text of the Software Materials or portions of any software of firmware itself are not disclosed, this does not preclude consultants, experts, or counsel of record from providing Software Materials Work Product to in-house counsel for review.

(g) Upon the conclusion of this litigation, the parties shall delete all Software Materials from any storage media associated with the stand-alone computer referenced in paragraph 7(d)(i) and overwrite the bits used to store those files on the computer's storage media using commercially accepted secure erase software. Any media or storage device not amenable to secure erase shall be physically destroyed.

(h) To the extent that it becomes necessary or appropriate to do so, the parties may jointly agree to modify the procedures and provisions of this paragraph 7 without leave of court if done so in writing signed by counsel on behalf of all parties.

8.   (a)   Should a receiving party find it necessary in the preparation for trial of this action to disclose a producing party's "CONFIDENTIAL INFORMATION" to (i) an independent technical, graphics, jury, or business consultant retained by the receiving party or its attorneys for the purpose of assisting in connection with the above actions, (ii) business or technical persons employed by a party to the above action whose functions require that they have access to "CONFIDENTIAL INFORMATION" in connection with the prosecution or defense of this action, or (iii) any other person who is not an authorized recipient under the terms of this Protective Order and whose assistance may be required for preparation for and/or trial of this

10

EX. F, Pg. 108

action, then the consultant or other person to whom disclosure is to be made shall execute a written signed assurance in the form of Attachment A hereto for "CONFIDENTIAL INFORMATION" stating that he or she has read and understood this Protective Order and agrees to be bound by its terms. The receiving party shall retain all such written signed assurances and promptly provide a copy to the producing party.

(b) Should a receiving party find it necessary in the preparation for trial of this action to disclose a producing party's "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" to an independent technical, graphics, jury or business consultant retained by the receiving party or its attorneys for the purpose of assisting in connection with this action, then written notice shall be served on the producing party at least ten (10) days prior to the disclosure, identifying the consultant or other person, his or her address and telephone number, and including a copy of the person's resume or curriculum vitae, describing all relevant employment and all legal actions in which such consult has been involved and in what capacity he or she has been involved, his or her present employer and his or her position. Such notice shall be accompanied by a written signed assurance by the consultant or other person to whom disclosure is to be made, in the form of Attachment B hereto for "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" stating that he or she has read and understood this Protective Order and agrees to be bound by its terms. If the producing party objects to the proposed disclosure, it shall have ten (10) business days after the receipt of the notice to provide, via facsimile, email or overnight courier, the receiving party with a written objection to the disclosure, which objection shall state the reasons for objecting to this disclosure. The disclosure of "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" shall not be made to such consultant or other person until approval is

11

Ex. F, pg. 109

given by the producing party or until ten (10) business days after the producing party's receipt of the notice, whichever is earlier; provided, however, that if the producing party so objects, such written objection shall stay disclosure to such person. The parties shall meet and confer concerning such written objection within ten (10) days of the service thereof. If such written objection remains unresolved after meeting and conferring, the party requesting disclosure to said person may submit the matter to the Magistrate Judge for decision. A party seeking Court review of the Magistrate Judge's decision on the matter may proceed with such disclosure only as and when the Court orders.

(c) Should a receiving party find it necessary in the preparation for trial of this action to disclose a producing party's "CONFIDENTIAL INFORMATION" and/or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" to a vendor for document processing, such vendor shall execute a written, signed assurance in the form of Attachment B hereto for "CONFIDENTIAL INFORMATION" stating that he or she has read and understood this Protective Order and agrees to be bound by its terms. The disclosing party shall retain all such written signed assurances. For the purposes of processing documents for a receiving party only, such vendor shall be permitted access to both "CONFIDENTIAL INFORMATION" and "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" without the requirement of notice to the producing party as required by paragraph 8(b) herein.

9.    Nothing in this Protective Order shall prohibit the transmission or communication of "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" between or among authorized recipients (a) by hand delivery, face to face conference; (b) in sealed envelopes or containers via the mails or an

12

EX. F, pg. 110

established freight, delivery or messenger service; or (c) by telephone, telegram, facsimile or other electronic transmission system, if, under the circumstances, there is no reasonable likelihood that the transmission will be intercepted or misused by any person who is not an authorized recipient.

10.    An attorney, who is an authorized recipient under the terms of paragraph 5 of this Protective Order, may render advice to his or her client with respect to this action and rely generally upon confidential information but provide no specific confidential information. However, in rendering advice or in otherwise communicating with his or her client, such attorney shall not produce any such materials or disclose the information contained in any "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" produced by another party herein where such disclosure would not otherwise be permitted under the terms of this Protective Order.

11.    In connection with any oral hearing, trial or proceeding concerning the above actions before the Court, prior to disclosure in open court of "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION," attorneys for the party seeking to make such disclosures shall request at the oral hearing, trial or proceeding that the Court provide appropriate *in camera* treatment of any "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" necessary to be disclosed in relation to such hearing, trial or proceeding or any other procedure appropriate to protect the confidentiality of the information.

12.    The Clerk of this Court is directed to maintain under seal all documents and transcripts of deposition testimony filed in Court which have been designated, in whole or in

*EXF.pg.111*

part, as "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE

ATTORNEYS EYES ONLY INFORMATION" in this action. Such documents shall be filed in

the Clerk's office in sealed envelopes with a copy of the caption page affixed to the outside of the

envelope, along with the legend "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER"

or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY – SUBJECT TO

PROTECTIVE ORDER" and a statement substantially in the following form:

> This envelope contains Confidential Material filed by [name of
> party] and is not to be opened, nor the contents to be displayed or
> revealed, by anyone other than authorized court personnel, except
> by Court Order.

In the event that a party wishes to use any "CONFIDENTIAL INFORMATION" or "HIGHLY

CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" in any

affidavits, briefs, memoranda of law or any other papers filed in Court in this action, such

"CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE

ATTORNEYS EYES ONLY INFORMATION" used therein shall be filed and maintained under

seal by the Court as set forth in this paragraph.

13.     Any person examined as a witness at deposition or trial may testify concerning all

"CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE

ATTORNEYS EYES ONLY INFORMATION" of which such person has prior knowledge.

Without in any way restricting the foregoing, the receiving party cannot disclose

"CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE

ATTORNEYS EYES ONLY INFORMATION" not otherwise known or accessible to the

witness unless the witness is employed by the producing party or unless and until the receiving

party complies with paragraph 8 of this Protective Order. If the witness is represented by

counsel not subject to this Protective Order, the witness's counsel must agree, either in writing or

14

EX. F, Pg. 112

on the record, to abide by this Protective Order prior to the receiving party disclosing or soliciting "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" in the presence of said counsel.

14.   With regard to the transcript of any deposition which has not been the subject of a designation under this Protective Order prior to or during the taking of such deposition, the producing party, or any party to this action, shall designate those portions of the transcript which constitute "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" within ten (10) business days after any such party receives a copy of the deposition transcript but in any event no later than fifteen (15) business days after any such party is notified in writing of the availability of the deposition transcript. The portions so designated shall thereafter be separated and treated as "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" and shall be subject to this Protective Order.

15.   Any inspection of original documents and things of a producing party by a receiving party, including the initial review of documents produced by a third party, shall be conducted only by outside counsel listed in paragraph 5 of this Protective Order and all such original documents and physical objects produced during discovery shall in all other respects initially be considered, as a whole, to constitute "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" and shall be subject to this Protective Order. After the receiving party has selected the documents or physical objects for copying, and before copies are released to the receiving party or contemporaneously therewith, the producing party, or any party to this action, shall have fifteen (15) business days to review the selected documents or physical objects, and to mark, or to designate for marking, in accordance with Paragraphs 1

15

*EX. F, pg. 113*

and 2 hereof, those which it considers to contain "CONFIDENTIAL INFORMATION" or

"HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION."

     16.    Where the producing party, in good faith, believes that information or other

material contained in a document is confidential and not relevant to the issues of this action, is

not responsive to any request, is withheld due to a claim of privilege, is responsive to a request

but is withheld on grounds other than privilege, or is withheld pursuant to any protective order,

such information may be redacted in accordance with a method described in section B.1. of the

Suggested Rules Of Discovery Practice of the Honorable Judge Shira A. Scheindlin.

     17.    The inadvertent or unintentional production of discovery materials shall not

operate as a waiver of any of the producing party's objections to the production of such material,

including but not limited to withholding in whole or in part on the basis of privilege or immunity,

production without designation as "CONFIDENTIAL INFORMATION" or "HIGHLY

CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION," or production

without redaction of non-relevant confidential information under the terms of this Protective

Order. In the event that any document subject to a claim of privilege or immunity is produced,

the producing party shall notify the receiving party of such fact. Upon receipt of such notice, the

receiving party shall make all reasonable efforts to retrieve or destroy all copies, if any, of such

document and to prevent further use or disclosure of the document and information contained

therein, and shall return all such copies to the producing party or certify in writing that they have

been destroyed. Any document that is produced without being designated "CONFIDENTIAL

INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY

INFORMATION" may be so designated or redesignated, with respect to future disclosure by the

producing party, and the receiving party shall make all reasonable efforts to retrieve all copies, if

*EX. F, pg. 114*

any, of such document disclosed to persons other than those listed in paragraph 5 of this Protective Order as authorized to receive such document as subsequently designated or redesignated and to prevent further use or disclosure of confidential information contained therein by such persons. In the event that any document is produced with non-relevant confidential information unredacted, the producing party may notify the receiving party of such fact and provide a redacted copy of such document to the receiving party. Upon receipt of such notice, the receiving party shall make all reasonable efforts to retrieve all unredacted copies, if any, of such document and to prevent further use or disclosure of the information to be redacted and shall return all such unredacted copies to the producing party or certify in writing that they have been destroyed.

18.    Nothing in this Protective Order shall prevent a receiving party from contending that any or all "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" is not confidential and/or not entitled to the level of confidentiality placed on the information by the producing party. Any receiving party may at any time request the producing party to cancel the "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" designation or downgrade the level of confidentiality with respect to any document, object and/or information and to agree that thereafter such document, object and/or information is to be no longer subject to the provisions of this Protective Order. Such request shall be written, shall be served on counsel for the producing party and shall particularly identify the "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" that the receiving party contends is not confidential and/or should be downgraded and the reasons supporting its contentions. The

17

EX F, p9. 115

request shall be deemed denied unless within ten (10) business days after receipt of such request, the producing party shall in writing approve the request. Thereafter, the receiving party may apply to the Magistrate Judge for release or downgrade of the specified "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" from this Protective Order. A party seeking Court review of the Magistrate's decision shall follow the procedure specified by applicable procedural rules and practices. The party seeking to protect the information and/or document bears the burden, in any application to the Magistrate, to establish the appropriateness of the protection or degree of protection sought.

19.    This Protective Order shall be without prejudice to the right of any party to oppose production of any information for lack of timeliness or relevance or any other ground other than the presence of "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION."

20.    Nothing in this Protective Order shall be deemed in any way to reduce or abrogate any preexisting confidentiality obligations owed to third parties and/or parties to this action.

21.    Nothing in this Protective Order shall be deemed in any way to reduce or enlarge the scope of discovery provided under the Federal Rules of Civil Procedure.

## MISCELLANEOUS PROVISIONS

22.    Any notice required or permitted under this Protective Order shall be in writing and shall be served upon all counsel who have appeared in this action (i) by hand delivery or (ii) by facsimile or email with a confirmation copy by overnight delivery. Any notice served by method (ii) shall be deemed to have been served on the day following the day of service by facsimile or email. In any dispute concerning the date that any notice was served by method (ii) under this paragraph, the party serving such notice must produce confirmation of service in order to prove that service was effected on a particular date.

EX F., P. 116

23.   Any of the notice requirements herein may be waived, in whole or in part, but only by a writing signed by the attorney of record for the party against whom such waiver will be effective or by a statement by such attorney made on the record in the course of a deposition or a court hearing.

24.   Within sixty (60) days of final termination of the above action, including all appeals, each receiving party and its authorized recipients shall, at its option, either return to the producing party or destroy all physical objects and documents which embody "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" and which were received from the producing party, and shall destroy, in whatever form stored or reproduced, all other physical objects and documents, including, but not limited to, pleadings, correspondence, memoranda, notes and other work product materials, which contain or refer to "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" except that trial counsel shall have the right to maintain a copy of all correspondence, pleadings, deposition transcripts and exhibits thereto, documents referred to in pleadings or introduced into evidence and the trial counsel's work product materials. Promptly, upon destruction of any documents or physical objects pursuant to this paragraph, the receiving party shall confirm to the producing party in writing which of the producing party's "CONFIDENTIAL INFORMATION" and "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" have been destroyed and shall furnish to the producing party copies of all written assurances signed pursuant to paragraph 8(a) of this Protective Order.

19

EX F, pg. 117

25. This Protective Order is entered without prejudice to the right of any party to apply to the Court at any time for additional protection, or to relax or rescind the restrictions of this Protective Order, when convenience or necessity require.

26. The parties also may amend or modify any provision of this Protective Order by mutual agreement which agreement shall be embodied in a written stipulation to be submitted for approval by the Court.

27. If any "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION" is disclosed to any person other than in a manner authorized by this Protective Order, the party responsible for the disclosure or knowledgeable of such disclosure, upon discovery of the disclosure, shall immediately inform the producing party of all facts pertinent to the disclosure that, after due diligence and prompt investigation, are known to the party responsible for the disclosure or knowledgeable of the disclosure (including the name, address, phone number, and employer of the person to whom the disclosure was made), and shall immediately make all reasonable efforts to prevent further disclosure by each unauthorized person who received such information.

28. This Protective Order and the undertakings signed pursuant to this Protective Order shall survive termination of this action and continue in full force and effect thereafter.

29. The parties agree that, pending approval by the Court, this Protective Order, including any agreed amendments or modifications made pursuant to paragraph 26 of this Protective Order, shall be effective as if approved and, specifically, that any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order had been entered by the Court on the date of execution by counsel for the respective parties.

20

EX. F, p9·118

IT IS SO ORDERED, with the consent of the parties, this 28 day of

_____, 2007.

Honorable Frank Maas
United States Magistrate Judge

SHIRA A SCHEINDLIN

21

EXF, p9.119

Dated: _September  21_ , 2007

CHADBOURNE & PARKE LLP

By _____

   Walter G. Hanchuk (WH-7096)
   Dennis C. Hopkins (DH-3767)
   30 Rockefeller Plaza
   New York, New York 10112
   (212) 408-5100

*Attorneys for Plaintiffs/Counterclaim Defendants,*
   PowerDsine, Inc. and PowerDsine, Ltd.
*Attorneys for Third-Party Defendant,*
   Microsemi Corporation

Dated: _September 24_ , 2007

PERKINS COIE LLP

By _____

   Michael A. Oblon
   607 Fourteenth Street, N.W.
   Washington, D.C. 20005
   (202) 628-6600

*Attorneys for Defendants/Counterclaim-Plaintiffs,*
   AMI Semiconductor, Inc. and
   AMI Semiconductor Belgium BVBA

EX.F, pg. 120